**Virginia SWOPE and Opie Swope, Plaintiffs-Appellees,**

v.

**Joseph H. PRINTZ, M.D., Defendant-Appellant.**

No. 54586.

Supreme Court of Missouri,
Division No. 1.

June 14, 1971.

Paul Scott Kelly, Jr., Phil M. Cartmell, Jr., Tucker, Murphy, Wilson, Lane & Kelly, Kenneth I. Grissinger, Kansas City, for plaintiffs-appellees.

William H. Woodson, Jerome T. Wolf, Spencer, Fane, Britt & Browne, Kansas City, for defendant-appellant.

HOUSER, Commissioner.

Virginia Swope and her husband Opie recovered judgments of $32,000 and $6,000,

respectively, against Joseph H. Printz, M. D., a surgeon, for malpractice and loss of consortium. On appeal defendant seeks reversal of the judgments, claiming that the action is barred by limitations, and that the evidence of negligence and causation is insufficient. Alternatively, defendant asks for a new trial for procedural errors.

Defendant performed a thyroidectomy on Mrs. Swope at Menorah Hospital in Kansas City on October 7, 1963. This suit was filed on November 24, 1965. Plaintiffs charged that defendant "was negligent and careless in the performance of the * * * operation, and during the course thereof did negligently and carelessly sever, damage and injure the nerves in the plaintiff Virginia Swope's throat, which energize and control the said plaintiff's vocal cords," thereby permanently damaging and causing her vocal cords to be paralyzed. To avoid the 2-year statute of limitations,[1] escape the effect of the en banc decisions of Laughlin v. Forgrave, Mo.Sup., 432 S.W.2d 308, and Yust v. Barnett, Mo.Sup., 432 S.W.2d 316,[2] and invoke the tolling effect of § 516.280,[3] plaintiffs alleged that they did not become aware of the results and consequences of defendant's negligence until several months had passed following the operation, although they had sought to obtain information concerning the results of the operation from defendant; that although he had full and complete knowledge defendant failed to truthfully advise plaintiffs of the results of the operation and the damage done and intentionally and fraudulently concealed his negligence from plaintiffs.

On this appeal defendant contends that the running of § 516.140 was not tolled by § 516.280 because there was (a) no sufficient evidence that in his dealings with plaintiffs following surgery defendant was guilty of any improper act or omission or fraudulent concealment of negligence with actual knowledge thereof, as required by Kauchick v. Williams, Mo.Sup. en banc, 435 S.W.2d 342; Smile v. Lawson, Mo.Sup. en banc, 435 S.W.2d 325, and Brown v. Grinstead, 212 Mo.App. 533, 252 S.W. 973, in malpractice actions, and (b) no expert medical testimony that defendant failed to measure up to professional standards in the community in his postoperative dealings with plaintiffs.

Plaintiffs counter with the contention that they had two years after the date the damage was discoverable by them (which they say was eight months after the operation, because of defendant's improper acts and misconduct in his dealings with them in the postoperative period) within which to file suit under § 516.100[4]; request review of the decisions in Laughlin v. Forgrave and Yust v. Barnett, supra, holding otherwise; ask that these decisions be overruled, and contend that the running of the 2-year statute was also tolled because of the operation of § 516.280.[3]

We decline the invitation to reconsider the lately decided cases of Laughlin and Yust, supra, but in view of the fact that § 516.280 applies to limitations in malpractice cases, Kauchick v. Williams, supra, we will determine whether there was sufficient evidence to justify a finding that defendant knew there was malpractice and

---

1. § 516.140. (All section references are to RSMo 1959, V.A.M.S.)

2. Holding that under §§ 516.100 and 516.140 the 2-year statute of limitations in malpractice actions begins to run on the date of the act of neglect complained of (the operation in this case) and not on the date when the damage is discoverable by the injured party.

3. "If any person * * * by any * * * improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

4. " * * * the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is * * * capable of ascertainment, * * *."

fraudulently concealed the fact from plaintiffs. Fraudulent concealment of this type would constitute an "improper act" within the meaning of § .516.280 and would toll the running of the 2-year limitation period until the fraud was discovered or could have been discovered through reasonable diligence. Smile v. Lawson, supra.

On this appeal we view the evidence in the light most favorable to plaintiffs, who prevailed below, giving them the benefit of all favorable inferences and disregarding defendant's evidence except insofar as it may favor plaintiffs. Rauschelbach v. Benincasa, Mo.Sup., 372 S.W.2d 120, 125.

Plaintiffs claimed that the recurrent laryngeal nerves were injured in the operation. These nerves, one on each side of the neck, enervate the muscles attached to the vocal cords. The brain sends impulses through these nerves thereby causing the cords to open and close. They lie on the back side of and in close proximity to the thyroid gland, between windpipe and esophagus. One of the hazards of thyroid surgery is the possibility of injury to the laryngeal nerves. If they are severed the vocal cords instantly cease to move. They may be injured by direct traumatic injury to the nerve during the operation, or by edema (swelling of surrounding tissues or of the nerves themselves), or by the formation of scar tissue. Symptoms of injury to these nerves are respiratory difficulty (closing of the cords interferes with free passage of air into the lungs), hoarseness and a change in the pitch of the voice. Due to anatomical variations these nerves are not always found in exactly the same place; they vary from one human being to another in the route they take and in the way they branch. There are two recognized methods of dealing with them. One school of thought recommends they be visualized, exposed and put to one side to avoid injury to them. The other believes that in exposing the nerve it may be injured and therefore the surgeon should not attempt to isolate or expose it, or dissect in the area adjacent to the nerve, and that in removing the thyroid gland a residue of tissue is left in the area where the nerve is normally located. If the entire gland is removed it is a "total" thyroidectomy; if a small rim of tissue is left it is a "subtotal" thyroidectomy.

Defendant visualized the nerve on the right side and followed the first technique on that side. The other nerve not being apparent he followed the other technique. He left a rim of thyroid tissue posteriorly on both sides.

The operation concluded, the patient was taken to the recovery room at 12:10 p. m. At 12:30 respiration appeared slightly obstructed. An attempt to insert an airway failed. Drugs and oxygen were administered at 1 p. m. Approximately one hour after entering the recovery room the patient experienced a "terrific inspiratory stridor" (harsh whistling sound like crowing) and had a great deal of difficulty in breathing. A nasal tracheal tube was inserted at 1:10, removed at 3:05, reinserted at 3:20. At 4:10 the patient was readmitted to the operating room and with a little more anaesthesia a tracheotomy (a surgical opening of the trachea) was performed. The preoperative and postoperative reports signed by defendant describe the contemplated and the performed operation as a total thyroidectomy. On October 8, the day after the operation, the hospital records, written by defendant, state: "It is a question whether there is some edema here or whether there is actually injury to the nerves." At the trial defendant testified that in making that statement he was considering the fact that that may have happened. The pathologist to whom the organ was delivered after the operation noted receipt of a total thyroid gland, a portion of the tissue of which was "distorted by trauma." The patient was discharged from the hospital on October 15, 1963. Defendant noted in the discharge summary that the operation performed was a *subtotal* thyroidectomy, and he testified that it was true that a total thyroidectomy was not indicated in Mrs. Swope's case.

After the operation on October 8, Mrs. Swope did not see defendant until November 9, when she went to his office, told him that she was having trouble breathing and that her voice was weak. He examined her throat and said that her breathing and voice would get better. On January 15, 1964 defendant examined Mrs. Swope. At the trial he admitted that on that examination he had objective evidence that there may have been damage to the left cord; that it did not move. In his answers to interrogatories defendant had denied finding damage to the left cord on that examination. Thereafter Mrs. Swope saw defendant once in February, 1964, and the last time on March 25, 1964. In February she complained to defendant of real trouble breathing, talking and getting around, and she suggested that she see another doctor. Defendant said "No," that she would be all right, and gave her some medicine. In March she was breathing better, but was weak and could not do heavy work, and her voice was weak, and a little worse. Asked by Mrs. Swope whether she could go to Colorado, defendant answered "Yes, do anything you want to," and told her that she would be all right; that she probably would not have a strong voice but it would be normal and that her breathing would be normal. On each of these visits Mrs. Swope told defendant about her hoarseness, and defendant told her that sometimes edema or swelling can produce such things and that time, in many instances, over a fairly long period of time, will reduce this hoarseness. Dr. McCanse testified that it is not likely that the respiratory difficulty and stridor Mrs. Swope experienced would be caused by edema of the nerves occurring in the first several hours after the operation. Dr. Lapp testified that he would expect edema to subside very shortly, in a matter of several weeks at the most, and that edema would not last anything like six months. Defendant conceded in his deposition that it was not impossible that he may have damaged the nerve of the left side by moving it aside during the operation. Dr. McCanse testified that trauma to

the nerves could have produced the symptoms Mrs. Swope experienced right after the operation and up to the time she underwent a subsequent operation in July, 1964; that it was consistent with the symptoms she had right after the operation that there could have been injury to the nerves of this woman. Dr. Lapp testified that assuming stridor, difficulty in breathing and hoarseness of voice occurring immediately after an operation, "there may have been damage to the nerve." In the latter part of May Mrs. Swope went to a Dr. Allen, who referred her to Dr. Kirschner of the Kansas University Medical Center. Her main complaint was that she could not breathe well; that she had noticed the breathing problem immediately after the thyroidectomy, and that she had not had the problem prior to the operation by defendant. Examination revealed that neither of the vocal cords was moving; there was bilateral cord paralysis. Dr. Kirschner, answering a hypothetical question, gave his opinion that the paralysis of the vocal cords was caused by something that impaired the functioning of the recurrent nerves, "most likely during the surgical procedure." On Dr. Kirschner's recommendation Mrs. Swope submitted to another operation, the purpose of which was to open the larynx at the level of the vocal cords and swing one of the paralyzed cords laterally, thus enhancing the laryngeal opening to permit better breathing. As predicted by Dr. Kirschner the second operation resulted in a permanent "whisper voice" and there was decreased volume, but her physical strength was much improved.

In this case to entitle plaintiffs to submit fraudulent concealment under § 516.280 there must be proof (1) that in performing the surgery defendant did or failed to do something which caused the paralysis; (2) that defendant's conduct failed to meet the required standards of professional competence and therefore constituted negligence; (3) that defendant had actual knowledge that he caused the paralysis; (4) that with that knowledge defendant intended by his postoperative conduct and

statements to conceal from plaintiffs the fact that they had a claim against him for malpractice by reason thereof; (5) that defendant's acts were fraudulent, and (6) that plaintiffs were not guilty of lack of diligence in not sooner ascertaining the truth with respect to the situation.

There was sufficient evidence to comply with requirement (1). The jury could find from the foregoing evidence that paralysis occurred at the time of the operation as a result of injury to the larnygeal nerves. Whether there was sufficient evidence to meet the requirement of (2) is the subject matter of appellant's Point I B, that "As a matter of law there was no sufficient evidence and more particularly there was no sufficient expert medical evidence that defendant was guilty of negligence as submitted to the jury in Instructions No. 4 and 6[5] in his thyroid surgery."

■ Concededly expert medical testimony was necessary to make a submissible case of negligence. This is not the kind of case in which the lack of skill and care is so apparent as to be within the comprehension of lay jurors, requiring only common knowledge and experience to understand and judge without the guidance of professional testimony as to whether defendant used "that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession in good standing practicing in similar localities" (the well-known, required and accepted standard or test in this jurisdiction. MAI No. 11.06; Hart v. Steele, Mo.Sup., 416 S.W.2d 927, 931; Rauschelbach v. Benincasa, supra, 372 S.W.2d, 1. c. 124; Williams v. Chamberlain, Mo.Sup., 316 S.W.2d 505, 510). Expert medical testimony that defendant failed to meet that standard was indispensable. Generally in malpractice cases the doctrine of res ipsa loquitur is inapplicable. Williams v. Chamberlain, supra. Plaintiffs could not count alone on the mere fact that an injury occurred during the course of the operation. Spain v. Burch, 169 Mo.App. 94, 154 S.W. 172, 176[4]. The fact that Mrs. Swope had no breathing difficulties or voice impairment before the operation and that she had them immediately thereafter would not be sufficient to impose liability on defendant. Roberts v. Wood, S.D. Ala., 206 F.Supp. 579, 583, in which the court said: "The only evidence which remotely suggests negligence on the part of the defendant is the fact that plaintiff's right vocal cord is paralyzed, and the fact that she does not use her normal speaking voice. But these facts alone are not sufficient to prove negligence during the operation." Nor would the mere fact that there was an unexpected or bad result be sufficient to impose liability as long as the surgeon had and exercised the requisite degree of care. Fisher v. Wilkinson, Mo. Sup., 382 S.W.2d 627, 630. No presumption of negligence is indulged in because of an adverse result. Hart v. Steele, supra, 416 S.W.2d, 1. c. 931[3]. The burden was upon plaintiffs to prove negligence of the surgeon in failing to exercise the requisite degree of care and skill and that the negligent act or acts caused the injury. Fisher v. Wilkinson, supra; Williams v. Chamberlain, supra; Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600.

■ In an attempt to sustain their burden plaintiffs introduced the depositions of Drs. Kirschner and Jobson. It was Dr. Kirschner's opinion that the paralysis was due to "something" that occurred during the surgical procedure but he did not identify that something. Nor did he testify that defendant's performance constituted a failure to meet proper standards of skill

5. "Your verdict must be for plaintiff, (Virginia Swope, Opie Swope) if you believe:
"First, that the defendant performed a total thyroidectomy when only a sub-total thyroidectomy was indicated, and
"Second, defendant injured said plaintiff's (Virginia Swope's) recurrent laryngeal nerves, and
"Third, defendant was thereby negligent, and * * *."

and proficiency. Doctor Kirschner's testimony rises no higher than a mere possibility of negligent injury. In order to draw the conclusion of negligence from his testimony the jury would have to engage in conjecture and surmise. This is not sufficient to submit a malpractice case to a jury. Rauschelbach v. Benincasa, supra, 372 S.W.2d, l. c. 125[7].

Dr. Jobson testified that the operation as performed by defendant "was not up to acceptable medical standards." Defendant claims Dr. Jobson was incompetent to testify as an expert on negligence and causation in the field of thyroid surgery because in his training in England and Scotland many years ago he had only limited experience in that branch of medicine, had never performed a thyroidectomy or other major surgery, had not followed the literature relating to thyroid surgery since 1956. The step by step procedure in thyroidectomies was outside his specialty. His practice had been primarily concerned with psychiatry and the care of mental patients. Dr. Jobson, having been licensed to practice medicine in the State of Kansas and having practiced in Kansas City, Kansas for five years, was not incompetent to testify as an expert in the field of thyroid medicine and surgery, notwithstanding his limited experience and training in that field and his specialty in another field. The extent of the experience and competence of a medical expert in the field in which he undertakes to testify goes to the weight, not the admissibility, of his testimony. Pate v. St. Louis Ind. Packing Co., Div. of Swift & Co., Mo.App., 428 S.W.2d 744, 750 [3, 4, 5]; Sanguinett v. May Dept. Stores Co., 228 Mo.App. 1161, 65 S.W.2d 162, 166[8, 9]; Spaulding v. City of Edina, 122 Mo.App. 65, 97 S.W. 545.

Expert medical testimony that the performance of another doctor was substandard, however, must be based upon a proper test of professional competence. Dr. Jobson's testimony was not sufficient to submit the question of negligence to the jury because his opinion was based upon an improper test. Dr. Jobson gave the above answer in response to a hypothetical question ending with "Do you have an opinion of whether or not the operation as performed by Dr. Printz was up to acceptable medical standards *as you know them?"* (Our emphasis.) What his personal, individual understanding of acceptable medical standards may have been was not shown. His opinion was based upon a subjective test; on his own ideas and notions of what acceptable medical standards consist. There was no showing that Dr. Jobson knew or was acquainted with the standards of learning, skill and proficiency commonly exercised by ordinarily careful, skillful and prudent surgeons in good standing performing thyroidectomies in Kansas City and similar localities; no showing that he was acquainted with community standards of proficiency under the requirements of MAI No. 11.06. The Missouri test (MAI No. 11.06) was not referred to in examining Dr. Jobson. It was not demonstrated that in venturing his opinion Dr. Jobson was comparing defendant's performance with the ordinary exercise of skill or learning by such surgeons in such localities. His opinion, based upon his own undisclosed subjective conception of acceptable medical standards and not upon the well-known and required Missouri standard, may not be counted upon by plaintiffs to sustain their judgments.

In their effort to show that a submissible case was made on the pleaded charge that defendant carelessly severed, damaged and injured the nerves plaintiffs are not aided by the testimony of defendant's medical experts. (Their testimony negatives negligence on defendant's part. The assisting surgeon testified that nothing unusual occurred during the surgery. Doctors McCanse and Lapp testified that defendant's technique and manner of performing the operation were a standard type of procedure within the keeping of surgical practices in the community; that this surgery is not risk-free; that cord pa-

ralysis occurs from injury during operation in a small percentage of cases; that a surgeon may not be positive that he may not injure a nerve; and all a surgeon can do is to "use every effort to protect the nerves." In their opinion the cause of Mrs. Swope's problems was edema or swelling in the area, resulting ultimately in scar tissue on the laryngeal nerves which impaired the impulses to the vocal cords.)

Summarizing, while the evidence would warrant a finding that paralysis resulted from something that occurred during the surgery there is insufficient evidence to determine whether damage to the nerves occurred without negligence (that is, whether this is one of those rare cases in which nerve injury occurs despite the use of every precaution to avoid injury) or whether injury was caused by some negligence of defendant. As to the latter the only admissible evidence favoring plaintiffs is speculative and conjectural. As in Rauschelbach v. Benincasa, supra, there is a complete failure of proof of the essential element of plaintiffs' cases (negligence).

In addition to submission of the pleaded charge of negligence plaintiffs submitted another and unpleaded basis upon which the jury was authorized to make a finding of negligence, namely, that defendant performed a total thyroidectomy when only a sub-total thyroidectomy was indicated. Evidentiary support for this submission is claimed because of an answer given by defendant's Dr. McCanse who on cross-examination, over objection of defendant's counsel, testified that assuming a total thyroidectomy was not indicated but one was done, the work would not come up to Dr. McCanse's standards as he knew them as a surgeon in this community. This issue was not tried by the express or implied consent of the parties so as to enlarge the issues without formal amendment of the pleadings under Civil Rule 55.54, V. A.M.R. This issue was foreign to the case as pleaded and tried. This portion of Dr. McCanse's testimony was improperly ad-mitted over objection and may not be used as the foundation for a submissible case of negligence. "When a trial court admits evidence (erroneously) beyond the issues made by the pleadings, and then instructs (erroneously) upon such evidence, it is requiring the defendant to meet an issue of which it had no notice by the service of process and the petition. The defendant is entitled to know from the petition just what he is called upon to defend, and we cannot say that it is harmless when he is called upon to defend (without notice) a different negligent act." State ex rel. Central Coal & Coke Co. v. Ellison, Mo. Sup. en banc, 270 Mo. 645, 195 S.W. 722, 724.

If the issue had been pleaded the answer given by Dr. McCanse would not have been admissible for the reason that, as in the direct examination of plaintiffs' witness Dr. Jobson, plaintiffs' counsel again used an improper test. Instead of employing the MAI No. 11.06 test Dr. McCanse was asked to gauge surgical conduct according to "your standards as you know them as a surgeon in this community." (Our emphasis.) Dr. McCanse's standards may have been higher or different from the conventional, well-known test approved by the authorities, hence his answer could not assist plaintiffs in making a submissible case.

The judgments must be reversed for failure of proof. Since the record does not indicate that all available essential evidence has been fully presented and that no recovery can be had in any event and that on a new trial plaintiffs may be able to make a submissible case the cause is remanded for a new trial on all issues to give plaintiffs an opportunity to develop by expert medical testimony, if so advised and if such testimony is available, that defendant was negligent in causing an injury to the laryngeal nerves. State Farm Mutual Auto. Ins. Co. v. Underwood, Mo.Sup. en banc, 377 S.W.2d 459, 464[4]; Green v. Ralston Purina Company, Mo.Sup., 376 S.

W.2d 119, 128[15]; Mo.Dig. Appeal & Error, ▮▮▮▮

▮▮▮ Returning now to the question of the submissibility of the question whether § 516.140 was tolled under § 516.280, if on retrial evidence sufficient to demonstrate negligence on defendant's part is introduced, and if the same evidence which we have reviewed in this opinion is reintroduced, there will be sufficient circumstantial evidence for the jury to find that defendant had actual knowledge that he had negligently injured the nerves during the operation; that defendant was guilty of an improper act in not revealing this fact to plaintiffs; that defendant fraudulently concealed his knowledge of the true situation from plaintiffs; that by giving Mrs. Swope repeated assurances of eventual recovery and urging her not to seek other medical advice defendant engaged in trickery, deceit and deluded plaintiffs; that under the circumstances plaintiffs had a right to rely upon the advice and assurances given by defendant and that plaintiffs were not derelict in not sooner ascertaining the truth. In this situation the 2-year statute of limitations will not apply as a matter of law as claimed, and the fact question whether the running of § 516.140 was tolled by § 516.280 will be one for the jury under proper instructions.

▮▮▮ In this connection expert medical testimony that in his *post-operative* conduct failed to live up to the professional standards of the community is not necessary, as claimed by defendant.

While in this situation it is not necessary on this appeal to decide the points raising alleged procedural errors, plaintiffs in drafting their instructions on retrial will be well advised to consider the impact of Brown v. St. Louis Public Service Co., Mo.Sup. en banc, 421 S.W.2d 255, and Murphy v. Land, Mo.Sup., 420 S.W.2d 505, and the giving of separate damage instructions for each plaintiff. MAI Nos. 4.01 and 35.05, Instruction 9.

The judgments are reversed and the cause remanded for further proceedings in accordance with this opinion.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Special Judge, concur.

HOLMAN, J., not sitting.