John **PETTET** and Susan Pettet,
Plaintiffs-Respondents,

v.

**S.A. BIETERMAN, Defendant-Appellant.**

No. 14321.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 17, 1986.

John A. Clark, Friedewald, Chadwick, Clark & Richardson, Poplar Bluff, for plaintiffs-respondents.

Manuel Drumm, Drumm & Winchester, Sikeston, for defendant-appellant.

TITUS, Presiding Judge.

This appeal is brought by defendant S.A. Bieterman, a physician and surgeon, from a judgment in favor of plaintiff Susan Pettet for $75,000 and a judgment in favor of plaintiff John Pettet, her spouse, for $5,000. The case involves a lawsuit for money damages arising out of the negligence of defendant in performing a laparoscopic application of Fallopian rings, a sterilization procedure, upon Susan Pettet.

Defendant admits that at some point during the procedure he perforated Susan's bladder in two places. The same day after the procedure was completed and Susan had recovered somewhat, she was allowed to return home. Once there, she continued to suffer severe pain and fever, and was unable to urinate. After two days with no improvement, John Pettet called defendant and advised him of his wife's condition. Shortly thereafter defendant met John and Susan at the hospital where an obstetrician-gynecologist and a urologist were called in to consult. Surgery was performed and two holes in Susan's bladder were discovered from which it appeared that something had perforated her bladder by going in one side and out the other. The two holes were then surgically repaired, which required a ten day post-operative hospitalization.

In addition, according to plaintiffs' expert, the two holes in Susan's bladder permitted urine to empty into her abdominal cavity which eventually resulted in the formation of adhesions. These adhesions have led to continuing discomfort for Susan and marital problems between Susan and John.

In his first point defendant alleges the trial court erred in finding there was a submissible case for the jury as plaintiffs failed to establish one of the elements of a prima facie case of medical malpractice. We do not agree that plaintiffs failed to make a submissible case. In order to make a prima facie case of medical malpractice, the evidence must establish three elements. "These three elements are proof that an act or omission of the defendant failed to meet the requisite medical standard of care, proof that the act or omission was performed negligently, and proof of a causal connection between the act or omission and the injury sustained by the plaintiff...." *Yoos v. Jewish Hosp. of St. Louis*, 645 S.W.2d 177, 183[1] (Mo.App. 1982). In determining whether or not plaintiffs have succeeded in making such a prima facie case, "all the evidence must be viewed in the light most favorable to the plaintiffs, giving them the benefit of all favorable inferences and disregarding defendant's evidence, except insofar as it might be favorable to the plaintiffs." *Id.* at 183[5]. If it may be fairly inferred that defendant was negligent, the evidence is sufficient, but if under the evidence viewed most favorably to plaintiffs, "the question

of negligence can be determined only by resort to conjecture and surmise on the part of the jury, the plaintiffs failed to make a submissible case." *Id.*

In his argument under his first point defendant contends plaintiffs failed to establish the first element of a prima facie case (the required medical standard of care), because plaintiffs never specifically inquired of their expert, "whether or not *defendant did or did not use that degree of skill and learning ordinarily used under the same or similar circumstances?* "

The plaintiffs' expert witness, Dr. Daniel J. Martin, was shown to be a member of the American College of Obstetrics and Gynecology, the American Board of Obstetrics and Gynecology, certified in 1967 and recertified in 1976, a member of the American Association of Gynecological Laparoscopists, a Clinical Instructor at the St. Louis University School of Medicine in obstetrics and gynecology, and a senior teacher on the faculty at St. John's Mercy Medical Center in obstetrics and gynecology.

■ Where a witness' testimony cannot be considered inherently self-contradictory, it must be considered as an integrated whole. *Yoos,* 645 S.W.2d at 185[8]; and *Odum v. Cejas,* 510 S.W.2d 218, 223[4] (Mo.App.1974). In viewing Dr. Martin's testimony as a whole and in the light of the oft quoted purpose of establishing a standard by which the jury can determine the question of negligence without resorting to "surmise or conjecture", and while viewing the testimony in a light most favorable to plaintiffs, we look to the instant cause to determine if the jury had a sufficient understanding of the requisite standard of care. We find that it did.

■ The well settled law of this state requires that the standard is not to be that of an individual as "the standards of a single member of the profession may be higher or lower than the standards of the profession as a whole." *Miller v. Scholl,* 594 S.W.2d 324, 329[9] (Mo.App.1980). In

reviewing Dr. Martin's testimony as to how the operation was performed and as to how it should have been performed, we have found his testimony to be based upon the "standard," "accepted," and "prescribed" medical practice and not upon his own personal opinion. In addition, the testimony of defendant's expert put the objective standard of "that degree of skill and learning ordinarily used under the same or similar circumstances" before the jury. Defendant has not cited us to any authority which has held that the intonation of the phrase in question is a required element of plaintiffs' prima facie case. Together, the testimony of plaintiffs' expert and defendant's expert allowed the jury to base their decision on a clearly identified objective medical standard of how the procedure was to be performed without employing conjecture or surmise. The jury applied the required medical standard of care shown by the evidence to defendant's conduct and found defendant had not met that standard. The point is denied.

■ In his second point defendant alleges there was no submissible case as plaintiffs failed to show the required causal connection between defendant's negligence and the holes in Susan Pettet's bladder.

The third element needed to establish a prima facie case of medical malpractice, the causal connection, was well established. There was evidence that defendant made one of the incisions too low and inserted a trocar[1] too far and that this caused the perforation of the bladder and resulted in Susan Pettet's injuries and damages. There was sufficient evidence for the jury to conclude that "but for" the negligent manner in which defendant performed the laparoscopic surgical procedure on Susan Pettet, her bladder would not have been perforated. The court nisi could not have ruled otherwise without ignoring facts which established at least "a reasonable probability that the defendant was negligent." *Yoos,* 645 S.W.2d at 183[5]. Hence a prima facie case of medical malpractice

1. According to defendant's expert a "trocar is a sharp instrument that slides down through a hollow tube." It is used to penetrate the abdominal wall.

was made and correctly left to the jury to decide.

■ In his third point defendant alleges the court below erred in allowing plaintiffs to introduce evidence of another bladder injury incurred in another laparoscopic procedure performed by defendant as the evidence was collateral and irrelevant, prejudicial to defendant, and properly objected to by defendant.

While it is true that defendant's subsequent act would be inadmissible to show that he had been negligent on the occasion in question, *see Chaney by Chaney v. Creten*, 658 S.W.2d 891, 893 (Mo.App.1983), the general rule is that if "evidence is admissible on any issue, it is not to be excluded because it would be inadmissible on another issue in the case." *Id.*

The defendant on direct examination solicited by his attorney stated, "[I]t (referring to the possibility of hitting one of the visceral organs) is known to happen in as many as one, two or three in a thousand women, and if I do one thousand women this could happen in three out of the thousand." During cross-examination of defendant the trial court permitted plaintiffs' attorney to inquire, "Doctor, you testified on direct examination that one or two or three out of a thousand of these laparoscopies result in a puncture of the bladder, did you not?" Defendant responded, "Yes, I did." Plaintiffs' attorney then asked, "And you performed about eight or ten of these laparoscopic operations at the Kneibert Clinic alone and out of those you perforated the bladder on two of your patients, did you not?" To which defendant simply replied, "That's correct."

The court nisi in chambers before allowing the above line of questioning stated, "The only problem I'm having with it (plaintiffs' counsel's question), Mr. Drumm, is the fact that you elicited on direct examination, for some reason, the testimony about the two or three bladders in a thousand operations or two or three something. I don't know whether you opened up the gate or not." The court then later stated, "Like I say, I wouldn't have any problem with it unless you opened it up by your direct examination. That's what I'm concerned about." It then overruled defendant's objection. Where, as here, defendant has opened up the subject, he will not be heard to complain of the testimony elicited by plaintiffs to refute the inferences raised by his evidence. *Corley v. Andrews*, 349 S.W.2d 395, 403 (Mo.App.1961). Defendant's third point is denied.

■ In his fourth point defendant alleges the court nisi erred in giving the verdict-directing instructions numbered 8 and 12 as they failed to require a finding by the jury that the injury to the bladder occurred during the blind insertion of the needle through which gas is introduced to distend the skin of the abdomen outward to provide working room, or by the insertion of the lower trocar.

Instructions No. 8 and No. 12 read as follows:

### Instruction No. 8

Your verdict must be for the plaintiff, Susan Pettet, if you believe:

First, defendant perforated the anterior and posterior aspect of the plaintiff's bladder, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence plaintiff sustained damage.

unless you believe plaintiff is not entitled to recover by reason of Instruction Number 10.

### Instruction No. 12

Your verdict must be for the plaintiff, John Pettet, if you believe:

First, defendant perforated the anterior and posterior aspect of the plaintiff's wife's bladder, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence plaintiff's wife was injured and plaintiff John Pettet thereby sustained damage.

unless you believe plaintiff is not entitled to recover by reason of Instruction Number 14.

First we note that defendant has placed nothing in the record before us to indicate that he ever objected to plaintiffs' proffered instructions at the time of the instruction conference. See *Lawton v. Jewish Hosp. of St. Louis*, 679 S.W.2d 370, 374–75[9] (Mo.App.1984) where it was held no reversal was warranted even assuming error under such circumstances.

Second we note that the continued viability of Supreme Court Rule of Civil Procedure 70.03—Objections to Instructions— has been questioned. *Koenig v. Babka*, 682 S.W.2d 96, 99 (Mo.App.1984). In addition, another appellate court has held the presumption of prejudice from instructional error has been reversed based upon the reasoning of *Hudson v. Carr*, 668 S.W.2d 68 (Mo. banc 1984) and *Fowler v. Park Corporation*, 673 S.W.2d 749 (Mo. banc 1984) that if counsel failed to detect the error, its prejudicial effect must be minimal, and if counsel noted the error and remained silent he has waived any objection to a correctly instructed jury. *Points v. Dzur*, 713 S.W.2d 634, 635 (Mo.App. 1986). Defendant's counsel in his brief pointed out to this court, "How simple it would have been for those Instructions to say: 'First, defendant caused the holes in the bladder during the introduction of the lower trocar.'" We agree with this statement. It too indicates the slight error, if any, involved in omitting the language complained of. If defendant had felt its omission was more than slightly prejudicial, he surely would have preserved his objections

to these instructions prior to his motion for new trial.

Third, in looking at defendant's counsel's closing argument, nowhere does he argue that the holes in the bladder were caused by anything other than the insertion of the lower trocar. *Fowler*, 673 S.W.2d at 756[13], holds that counsel's argument may be looked at to determine whether possibly erroneous instructions had likely prejudicial impact. Here, defendant's counsel never made the manner of how the perforations in the bladder occurred an issue. In addition, both plaintiffs' expert and defendant's expert testified that the holes in Mrs. Pettet's bladder were caused by the insertion of the lower trocar. "It is not necessary to submit for finding by the jury questions of fact established by testimony of both proponent and his adversary." *Gottlieb v. Hyken*, 448 S.W.2d 617, 620[1] (Mo.1970). Considering the doctrines enunciated above, we find no prejudicial error in the giving of the verdict-directing instructions numbered 8 and 12.

■ Defendant in his last point alleges the court nisi erred in permitting an answer to a hypothetical question submitted by plaintiffs' counsel to their expert, Dr. Martin, because the question did not fairly hypothesize and present the material facts of the plaintiffs' theory of the case and thus their expert's answer could not assist the jury in its determination of the causal connection issue of the case.[2]

Defendant acknowledges that a hypothetical question need not include all the facts, just those that "fairly hypothesize the material facts reasonably relevant to, and justly presenting, the questioner's the-

---

**2.** Following a hypothetical question by plaintiffs to their expert which set forth the laparoscopic procedure as shown in defendant's medical records, the following question and objection occurred:

[Plaintiffs' attorney:] Q. Doctor, I want you to assume further, assuming the facts that I have already given you I want you to assume further that on the 21st day of October, 1982, an exploratory laparscopic was done, a laparotomy was done and it revealed a three millimeter hole in the anterior portion of the dome of the bladder and another three mil-

limeter hole in the posterior aspect of the dome of the bladder. Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether or not those perforations of the bladder are causally related to the matter in which the laparoscopic application of the Falope Rings was performed?

[Defendant's attorney:] Object to that hypothetical question in that it omits many of the facts in evidence and includes facts not in evidence.

ory of the case, so that an answer of assistance to the jury in proper determination of the case may be elicited." *Odum,* 510 S.W.2d at 222. Defendant also acknowledges that plaintiffs' hypothetical question was based upon the "laparoscopic procedure as set forth in Appellant's medical records of same ...[.]" Defendant's objection to plaintiffs' hypothetical question was merely, "Object to that hypothetical question in that it omits many of the facts in evidence and includes facts not in evidence."

As defendant failed to call the court nisi's attention to what matters in evidence were omitted from the said question, the trial court cannot be said to have erred in overruling defendant's objection. *Morton v. St. Louis-San Francisco Ry.,* 323 Mo. 929, 952–53[13], 20 S.W.2d 34, 45[15] (1929); *Ackerman v. Lerwick,* 676 S.W.2d 318, 321[7] (Mo.App.1984); *Cole v. Evans,* 546 S.W.2d 748, 750[1] (Mo.App.1977).

It follows that the judgment of the court nisi must be affirmed and it is so ordered.

FLANIGAN and GREENE, JJ., concur.