Larry DEVENEY, et al., Appellants,

v.

Max D. SMITH, Jr., D.D.S.,
et al., Respondents.

No. WD 43794.

Missouri Court of Appeals,
Western District.

June 11, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 30, 1991.

Application to Transfer Denied
Sept. 10, 1991.

FENNER, Judge.

Appellants Larry Deveney and his wife, Cathy Deveney, appeal from a judgment, after trial by jury, in favor of respondent Max D. Smith, Jr., D.D.S. (Dr. Smith), and also in favor of the two corporate entities under which he conducts business, respondents Max D. Smith, Jr. D.D.S., P.C. and Oral Surgeons Inc.

Larry Deveney brought suit against respondents for medical malpractice alleging that Dr. Smith negligently removed his lower wisdom teeth causing permanent damage to his lingual nerves. Deveney claims that he suffered a loss of feeling and taste in the anterior two-thirds of his tongue, numbness on the bottom of his mouth and numbness in his gums on the tongue side of his teeth. The fact that Deveney suffered from bilateral lingual nerve damage was not in dispute.

The lingual nerves exist independently on both sides of the mouth, on the tongue side of the teeth. The lingual nerves carry the sensory nerves to the tongue, floor of the mouth and gums. X-rays do not reveal nerves and the location of the lingual nerves is not revealed in normal wisdom teeth extractions.

Appellants raise several points on appeal. Their first point is dispositive. Therefore, only the first point and the additional points likely to recur on retrial will be addressed.

In their first point, appellants argue that the trial court erred in refusing to admit testimony and medical records of two other patients of Dr. Smith who allegedly suffered from permanent bilateral lingual nerve damage from lower wisdom teeth extractions. Appellants argue that the evidence was relevant and admissible because: (1) it served to discredit the defense that bilateral lingual nerve damage is so rare from lower wisdom teeth extractions that Larry Deveney's injury could only have been the result of a rare or anomalous nerve pattern in his mouth; (2) it served to discredit the defense that bilateral lingual nerve damage from lower wisdom teeth extractions is a statistical improbability or impossibility; (3) it served to refute Dr.

John Edward McKay, Kansas City, for appellants.

Thomas W. Wagstaff, Kansas City, for respondents.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

Smith's claim that his habit and custom for performing surgery was proper and safe; (4) it served to refute the assumption of respondents' expert, Dr. Moore, that Dr. Smith used a safe and proper technique for lower wisdom teeth extractions; (5) it affirmatively demonstrated that Dr. Smith had a dangerous technique, and (6) it impeached Dr. Smith's deposition testimony that he was not aware of any instances of permanent numbness from lower wisdom teeth extractions.

The other patients whose testimony and records appellants sought to admit were Carla Barber and Deanna Walter. Larry Deveney had his wisdom teeth extracted by Dr. Smith on August 14, 1985. Carla Barber had her wisdom teeth extracted on August 21, 1985, and Deanna Walter on November 4, 1985. Appellants made an offer of proof to show that Barber and Walter also complained of permanent bilateral lingual nerve damage as a result of Dr. Smith's surgery.

█ Other acts of negligence are generally inadmissible to show the actor negligent on the occasion in question. *Chaney by Chaney v. Creten*, 658 S.W.2d 891, 893 (Mo.App.1983). However, if evidence is admissible on any issue it is not to be excluded because it would be inadmissible on another issue in the case. *Id.*

█ The trial court has considerable discretion in deciding whether to admit or exclude evidence, but it is error to exclude competent evidence on a material issue of fact. *Fidelity & Deposit Company of Maryland v. Fleischer*, 772 S.W.2d 809, 818 (Mo.App.1989).

█ In the case at bar, Dr. Smith did not know precisely how the injury to Larry Deveney occurred. Dr. Smith testified as to his normal habit and custom of performing wisdom teeth extractions. Dr. Smith testified that he performed wisdom teeth extractions with the degree of skill and learning ordinarily exercised by members of his profession under the same or similar circumstances. Dr. Smith was of the opinion that Deveney's injuries were the result of scarring, swelling or needle trauma.

Dr. Smith testified that he was not negligent.

Dr. Smith called Dr. David Moore as an expert witness on his behalf. Dr. Moore testified on direct examination that, in his opinion, Larry Deveney's injury was not due to malpractice. Dr. Moore testified that the lingual nerves could be found to exist in various locations and patterns and in various sizes. Dr. Moore further testified that, in his opinion, Larry Deveney's nerve damage was due to his lingual nerves existing in an unusual or anomalous position, and as a result they were injured when the wisdom teeth were removed. When asked by respondents' counsel if the fact that Larry Deveney's nerves were injured on both sides was significant, Dr. Moore said that it was very significant. Dr. Moore explained that if Deveney had been injured as a result of malpractice or some accident, that the numbness would likely only have been to one side. Dr. Moore said, "it's unlikely or just hard to conceive that a young, well-trained oral surgeon was going to have the same accident happen on both sides."

Dr. Moore testified that the fact Larry Deveney suffered injury to the lingual nerves on both sides of his mouth led him to believe that the nerves were in anomalous positions. Dr. Moore also said that Larry Deveney's injury was an accepted risk in the extraction of wisdom teeth, but "very, very unusual."

In *Pettet v. Bieterman*, 718 S.W.2d 188 (Mo.App.1986), the plaintiff suffered a cut bladder during a laparoscopy. The defendant doctor testified on direct examination by his attorney that it was rare to have a bladder punctured during a laparoscopy. The defendant's testimony was directed to show that a punctured bladder, although rare, was a risk presented during a laparoscopy. On appeal, the court held that where the defendant raises an issue, such as frequency of an occurrence, the plaintiff can present relevant evidence to refute the inferences raised. In *Pettet*, the plaintiffs were allowed to present evidence of another bladder injury incurred in another lapa-

roscopic procedure performed by the defendant.

Here, as in *Pettet*, the defendant presented direct evidence on the issue of the frequency of the occurrence of which plaintiff complained. Dr. Smith presented testimony from Dr. Moore to show that the nature of the injury to Deveney was so rare that it had to be the result of an anomalous nerve pattern. A material part of Dr. Smith's defense was to show that this type of injury does occur on rare occasion when a patient has an unknown anomalous nerve pattern. Dr. Smith represented to the jury that Deveney's anomalous nerve pattern, not his negligence, was the cause of Deveney's injury.

Dr. Smith presented evidence on the frequency of occurrence of permanent bilateral lingual nerve damage as a defense to this action. Dr. Smith made frequency of occurrence a material issue. It was reversible error for the trial court to exclude evidence of other occurrences of permanent bilateral lingual nerve damage to patients of Dr. Smith within the same relative time frame as Larry Deveney's. This evidence was relevant to refute Dr. Smith's defense.

In order that there not be confusion on retrial, the evidence of injury to Barber and Wilson is not admissible to show that Dr. Smith has a dangerous technique or to refute the testimony of Dr. Smith or Dr. Moore that Dr. Smith's habit and custom for performing surgery was proper and safe. Other acts of negligence are generally not admissible to show negligence on the occasion in question. *Chaney by Chaney v. Creten*, 658 S.W.2d at 893.

■ In another of appellants' points likely to recur on retrial, appellants argue that it was error for the trial court to refuse to admit into evidence a list of other patients who suffered from numbness and other post-operative problems. The exact nature of the problems, duration and extent of the problems of those on the list is not revealed in the record.

The admissibility of the list in question depends upon its relevance. Evidence is relevant if it tends to prove or disprove a fact in issue. *Ransom v. Adams Dairy Company*, 684 S.W.2d 915, 917 (Mo.App. 1985).

A general list of patients with post-operative problems is not relevant to show that Dr. Smith was negligent in his treatment of Larry Deveney. The list would only be relevant, under the record here, if it was shown to prove or disprove the frequency of occurrence of the specific injury in question, permanent bilateral lingual nerve damage, as a result of Dr. Smith presenting the defense of frequency of occurrence as discussed under the first point herein.

The record did not establish the list as relevant and it was not error for the trial court to refuse to admit the list as evidence.

■ In another point, appellants argue that the trial court erred by refusing to allow Gail Dean, who was a former surgical assistant of Dr. Smith, to testify with respect to her observations of Dr. Smith's technique and procedure in extracting lower wisdom teeth. Appellants argue that Ms. Dean should have been allowed to testify as to her observations as a lay person or, alternatively, as an expert witness.

Gail Dean was not presented at trial as an expert witness. Appellants specifically advised the court that Ms. Dean was called as a lay witness, in regard to her observations, and not as an expert. Appellants cannot now complain that Ms. Dean was improperly excluded as an expert when no effort to present her as such was made at trial.

■ In regard to Gail Dean's observations, appellants complain that they were precluded from asking Gail Dean questions about Dr. Smith's surgical technique and that they were limited to inquiry on her factual observations. Specifically, appellants argue that Gail Dean should have been allowed to testify that Dr. Smith's surgical technique was rough, hurried, not smooth, that he used his surgical instruments in an improper manner and that Dr. Smith had no "game plan" in his technique.

Questions of the exercise of the proper degree of care and skill of a physician

require expert medical testimony. *Cebula v. Benoit*, 652 S.W.2d 304, 307 (Mo.App. 1983). The testimony of a non-expert witness is generally limited to facts, as opposed to conclusions. *Grace v. Union Electric Co.*, 239 Mo.App. 1210, 200 S.W.2d 364, 366 (1947).

The testimony of Gail Dean, as excluded by the trial court, called for her opinion as to whether Dr. Smith exercised the proper degree of care and skill in his surgical technique. Gail Dean was not qualified as an expert to offer such opinion.

■ In yet another point, appellants argue that the trial court erred by denying them the opportunity to impeach the trial testimony of Gail Dean with her deposition testimony.

At trial, Gail Dean testified that she observed Dr. Smith tearing tissue during wisdom teeth extractions on one occasion. She was then asked if she had previously said that she had observed Dr. Smith "rip" tissue on more than one occasion. She replied that she had previously made such a statement.

In Gail Dean's deposition she was asked about the manner in which Dr. Smith made incisions when extracting wisdom teeth. The relevant deposition testimony was as follows:

Q. (By Counsel for Appellants) And if the incision was too small or he needed to do something to get to the field better, how would he increase the size of the incision?

A. (By Gail Dean) Usually the tissue would just tear.

Q. What would he use to tear the tissue?

A. He wouldn't use anything to tear it. It would tear from the pull of the periosteal elevator.[1]

Q. So he would make the incision and then he would go in with the periosteal elevator and at times while he was working on the field, the incision would become torn bigger with the elevator.

A. Yes.

The trial court has wide discretion in regard to the examination of witnesses, including impeachment of witnesses for prior inconsistent statements. *State ex rel. State Highway Commission v. Blue Ridge Baptist Temple, Inc.*, 597 S.W.2d 236, 240 (Mo.App.1980). The court's rulings in regard to examination of witnesses will not be disturbed absent an abuse of discretion. *Id.*

There was no reference in Gail Dean's deposition testimony as to how many times she observed Dr. Smith tearing tissue during wisdom teeth extractions. The court was also properly concerned that Ms. Dean's deposition testimony related to matters of expert testimony. The court did not abuse its discretion by limiting appellants' efforts to impeach Gail Dean when she admitted at trial that she had previously made a statement inconsistent with her trial testimony.

■ In another point, appellants complain that the trial court erred by not allowing an in court demonstration of inserting a needle into and through Larry Deveney's tongue.

The admission of demonstrative evidence is a matter entrusted to the sound discretion of the trial court. *Fravel v. Burlington Northern R.R.*, 671 S.W.2d 339, 342–43 (Mo.App.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 907, 83 L.Ed.2d 921 (1985). Generally, the exhibition of a plaintiff's injury is highly relevant; since the defendant is charged with having caused the injury the jury should be able to see, in a dignified manner, what the defendant has done to the plaintiff. *Id.* at 343. Certain exhibitions, however, are deemed improper when designed merely to arouse antipathy against the defendant, sympathy for the plaintiff, or where they are irrelevant to any fact issue in dispute. *Id.* at 343. A trial court's decision to admit a demonstration is arrived at by balancing the potential for inflaming the jury against the aid of the evidence in resolving the dispute. *Id.* at 343.

---

**1.** A periosteal elevator is a dental tool used in the extraction of wisdom teeth.

In the case at bar, Larry Deveney's injury was not in dispute, the demonstration would not show Deveney's lack of taste, and the nature of the demonstration could unduly affect the jury. The trial court did not abuse its discretion by refusing the demonstration in question.

■ The last of appellants' points to be addressed in this opinion is their claim that the trial court erred by refusing to instruct the jury under the doctrine of res ipsa loquitur.

In a medical malpractice case the plaintiff must present sufficient evidence to establish first, a casual connection between the act or omission of the physician and the claimed injury, second, proof that the act or omission was negligently performed, and third, proof that the physician failed to meet the requisite medical standard of care. *Cebula v. Benoit,* 652 S.W.2d 304, 307 (Mo.App.1983).

The doctrine of res ipsa loquitur is available to relieve a plaintiff from the burden of proving specific negligence when (1) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (2) the instrumentality involved was under the management and control of the defendant; and (3) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. *Bonnot v. City of Jefferson City,* 791 S.W.2d 766, 768 (Mo.App.1990). Res ipsa loquitur is a term employed to describe a negligence case in which the negligence is proved by circumstantial evidence and which is sufficient to take the case to the jury. *Id.* The doctrine of res ipsa loquitur is a rule of evidence which allows the claimant to make a prima facie case of negligence without direct proof. *Id.*

The doctrine of res ipsa loquitur is only applicable in a malpractice case when a physician or surgeon may be found to have failed to exercise the requisite degree of care in the absence of expert medical testimony tending to so prove. *Hasemeier v. Smith,* 361 S.W.2d 697, 700 (Mo. banc 1962). In other words, for res ipsa loquitur to apply in a malpractice action, laymen must be able to find, based on their common knowledge or experience, without the aid of expert testimony, that a given result would not have occurred but for the physician's negligence. *Id.* at 701. No inference of negligence arises, and res ipsa loquitur is not applicable, from the fact alone that an unfavorable result ensues from treatment or surgery even though the unfavorable result may be a rare one in the particular case. *Id.*

The types of cases where res ipsa loquitur has been found to be applicable in malpractice actions are as follows: a patient suffered a neck injury from being improperly positioned on a table for a proctoscope examination, *Goodenough v. Deaconess Hospital,* 637 S.W.2d 123 (Mo.App.1982); a patient suffered a burn to her chest while undergoing surgery within her vaginal cavity, *Swan v. Tygett,* 669 S.W.2d 590 (Mo.App.1984); a patient suffered injury to her arm while undergoing back surgery, *Calvin v. Jewish Hospital of St. Louis,* 746 S.W.2d 602 (Mo.App.1988); a foreign object was left inside a patient after surgery, *Crump v. Piper,* 425 S.W.2d 924 (Mo.1968). In all of these cases, laymen could determine from common knowledge and experience that the injury would not have occurred but for the physician's negligence without the aid of expert testimony.

■ In the case at bar, it was not possible for laymen to determine from common knowledge and experience that Larry Deveney's injury would not have occurred but for Dr. Smith's negligence. The trial court did not err by failing to instruct the jury under the theory of res ipsa loquitur.

Trial error is reversible when it materially affects the merits of the action under review. *Roque v. Kaw Transport Company,* 697 S.W.2d 254, 256 (Mo.App.1985).

The judgment of the trial court is reversed and this cause is remanded for new trial.

All concur.