# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1467

_____

Noel K. Blevens,                               *
                                               *
                    Appellant,                 *
                                               *     Appeal from the United States
        v.                                     *     District Court for the
                                               *     Western District of Missouri.
George W. Holcomb, III,                        *
                                               *
                    Appellee.                  *

_____

Submitted: September 28, 2006
    Filed:   December 1, 2006

_____

Before RILEY and COLLOTON, Circuit Judges, and KYLE,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Noel K. Blevens appeals a post-trial order of the district court[2] granting judgment as a matter of law in favor of the defendant, Dr. George W. Holcomb, in this medical malpractice case. The district court ruled that Blevens's evidence was

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

insufficient as a matter of law, because his expert witnesses failed to articulate and apply the proper standard of care in their testimony. We affirm.

I.

DeLanie Blevens, Noel's daughter, was born with congenital defects in her bowel. On the morning of August 21, 2001, DeLanie complained to her father of severe abdominal pain and stiffness in her joints. After DeLanie vomited, her father took her to the emergency room at Western Missouri Medical Center ("WMMC") in Warrensburg, Missouri. Later that morning, an ambulance took her to Children's Mercy Hospital ("CMH") in Kansas City, Missouri. At CMH, several doctors, including Appellee George Holcomb, examined DeLanie. Dr. Holcomb, a pediatric surgeon and attending physician at CMH, diagnosed her with a possible early small bowel obstruction and ordered that she be admitted for observation. DeLanie remained in the hospital overnight, and Dr. Holcomb learned the next morning that DeLanie's condition had deteriorated. He commenced surgery in the morning, but could not proceed because of DeLanie's low blood pressure. A second operation was performed later in the day. By this time, however, the bacteria from DeLanie's bowel had entered the blood stream, and she died in the evening.

Noel Blevens sued Dr. Holcomb in Missouri state court for wrongful death as a result of alleged medical negligence. Mo. Rev. Stat. § 537.080 (2000). Blevens claimed that Holcomb should have monitored DeLanie's condition more closely during the night and performed surgery earlier. Holcomb removed the case to federal court, and it was tried to a jury.

At trial, Blevens presented the testimony of two expert witnesses, Dr. Mary Alice Helikson and Dr. David Fleischer. Dr. Helikson testified that "the appropriate standard of care" required Dr. Holcomb to order "further diagnostic studies." Later in her testimony, when asked what Dr. Holcomb "should . . . have done to meet the

appropriate standard of care," Dr. Helikson responded that Dr. Holcomb should have "continue[d] to evaluate the patient or operate on the patient." Dr. Fleischer initially answered counsel's question about Holcomb's performance by reference to what he would have done with his own patient. Counsel interrupted Fleischer and asked "what a physician who [was] following the standard of care would do in a situation like this." Dr. Fleischer responded that, given DeLanie's presentation, "[t]he standard of care is to admit the child for observation" and "impress the residents with the importance" of the possibility of rapid deterioration.

The jury found in favor of Blevens and awarded damages of $1,100,000, with 90% of the fault apportioned to Dr. Holcomb. The district court, however, granted Holcomb's post-trial motion for judgment as a matter of law. The court concluded that Blevens's experts had failed to articulate and apply the proper standard of care in testifying that Dr. Holcomb had been negligent.

II.

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Fed. R. Civ. P. 50(a). "We draw all reasonable inferences in favor of the non-moving party, and do not make credibility interpretations or weigh the evidence." *Mattke v. Deschamps*, 374 F.3d 667, 669 (8th Cir. 2004). In this diversity case, the law of Missouri applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). We review *de novo* a district court's grant of judgment as a matter of law.

To establish a claim for negligence under Missouri law, the plaintiff must prove: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) a failure of the defendant to perform that duty, and (3) an injury proximately caused by the defendant's failure. *Krause v. U.S. Truck Co.*, 787 S.W.2d

708, 710 (Mo. 1990) (en banc). To prove a breach of duty in a medical malpractice case, the plaintiff must show that the defendant failed to use "that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession." *Swope v. Printz*, 468 S.W.2d 34, 39 (Mo. 1971). Except in rare circumstances, a plaintiff cannot state a *prima facie* case of medical negligence without expert testimony describing how the defendant's conduct fell below the applicable standard of care. *Hart v. Steele*, 416 S.W.2d 927, 931-32 (Mo. 1967).

To meet the plaintiff's burden, expert testimony "must be based upon a proper test of professional competence." *Swope*, 468 S.W.2d at 40. A plaintiff cannot establish a case of medical negligence with an expert's "undisclosed subjective conception of acceptable medical standards." *Id.* Although experts need not recite the proper standard in "ritualistic fashion," they must show in their testimony "that the proper objective legal standard is the standard being employed." *Ladish v. Gordon*, 879 S.W.2d 623, 634 (Mo. Ct. App. 1994). Thus, the plaintiff need not "establish the standard of care in a particular manner," but "must adequately inform the jury as to the appropriate standard of care." *Redel v. Capital Region Medical Center*, 165 S.W.3d 168, 175 (Mo. Ct. App. 2005).

Testimony that a physician failed to live up to some vague "standard of care," without elaboration as to the content of that standard, is insufficient to satisfy this burden. *Ladish*, 879 S.W.2d at 634. In *Swope*, for example, the plaintiff's expert testified that an operation performed by the defendant was not "up to acceptable medical standards as [he] kn[ew] them." *Swope*, 468 S.W.2d at 40. The Supreme Court of Missouri held that this testimony could not establish medical negligence because "[w]hat his personal, individual understanding of acceptable medical standards may have been was not shown." *Id.*

Similarly, in *Ladish*, the plaintiff's expert testified that the defendant had failed to provide proper post-operation advice and that his conduct thus fell "below the

-4-

standard of care." *Ladish*, 879 S.W.2d at 634. Holding that this testimony did not satisfy the plaintiff's burden, the court said that "[q]uestions should not be propounded, or answered, in terms of inadequately explored legal criteria." *Id.* (internal quotation omitted). The court reasoned that the use of terms such as "accepted standards" and "standards of care" invite witnesses "to rely upon their own views of acceptable practice rather than applying the objective legal standard." *Id.* at 635. Instead, under Missouri law, experts must indicate what they mean when they say that another physician's conduct fell below the "standard of care." Something in their testimony must demonstrate that the defendant failed to use "that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession." *Id.* at 634.

In this case, neither of Blevens's experts explained what they meant when they testified that Dr. Holcomb had failed to meet the "standard of care." Dr. Helikson merely testified that the "appropriate standard of care" required further diagnostic studies and continued evaluation, without explaining the source of this standard. (T. Tr. at 276). Likewise, Dr. Fleischer's testimony did not provide the jury with evidence that Dr. Holcomb failed to exercise "that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession." *Ladish*, 879 S.W.2d at 634. Though counsel interrupted Dr. Fleischer when he began to describe how he would treat his own patient, counsel's follow-up question asked simply "what a physician who is following *the standard of care* would do in a situation like this." (T. Tr. at 326-27) (emphasis added). The witness responded that Dr. Holcomb had "violated the appropriate standard of care" by not admitting DeLanie for observation. (*Id.*).

Blevens argues that counsel's effort to redirect Dr. Fleischer's testimony toward a physician "following the standard of care" shows that the witness did not apply a subjective standard in testifying that Holcomb's conduct was negligent. That is not necessarily so, however, because a witness may testify about what another physician

should have done, but still apply a subjective test. *Swope*, 468 S.W.2d at 40. Even if the questioning indicated that Dr. Fleischer did not use a subjective standard, moreover, the colloquy does not show that Fleischer applied the *proper* objective standard. "What his personal, individual understanding of acceptable medical standards may have been was not shown." *Swope*, 468 S.W.2d at 40. The testimony is open to the interpretation, for example, that Dr. Fleischer believed the "best practice" in the field was to admit DeLanie for observation, even though this practice would not "ordinarily" be followed by members of the profession in same or similar circumstances. We therefore agree with the district court that neither witness "identified the content or source of the 'standard of care' to which they referred, leaving the jury without confirmation that they were referring to the standard required by law as opposed to a personal (or some other) standard of conduct." (App. at 112). *See also Keirsey v. Barnes*, 2006 WL 680956, at \*2 (E.D. Mo. Mar. 14, 2006) (observing that in *Blevens*, neither expert witness "defined what was meant by the phrase 'standard of care,'" and that both experts "compounded the problem by testifying as to what they would have done").

Blevens contends that even if Dr. Helikson and Dr. Fleischer failed to apply the proper standard of care, Dr. Holcomb's experts established it for him. In *Pettet v. Bieterman*, 718 S.W.2d 188 (Mo. Ct. App. 1986), one division of the Missouri Court of Appeals upheld a verdict for the plaintiff where the testimony of the plaintiff's expert was "based upon the 'standard,' 'accepted,' and 'prescribed' medical practice and not upon his own personal opinion." *Id.* at 190. Although the plaintiff's expert did not testify expressly concerning "that degree of skill and learning ordinarily used under the same and similar circumstances," the court added that because defendant's experts had explicitly stated the proper standard, the testimony of plaintiff's and defense experts, taken together, "allowed the jury to base [its] decision on a clearly identified objective medical standard." *Id.*

Noting that Dr. Holcomb's experts ritualistically stated the proper standard, Blevens argues that he can rely on that testimony to prove that his experts applied the proper standard. We disagree. Blevens concedes that *Pettet* is inconsistent with the decision of another Missouri court of appeals in *Ladish*, which declined to adopt the view that defense witnesses can establish the standard of care for the plaintiff. 879 S.W.2d at 634. While the *Pettet* court did not even cite the decision of the Supreme Court of Missouri in *Swope*, the *Ladish* court concluded that *Swope* "requires that the fact finder be informed of the standard being employed by plaintiff's experts in order for plaintiff to make a submissible case." *Id.* We deem *Ladish* more in keeping with *Swope*, and we thus apply *Ladish* as the better view of Missouri law in this diversity action. Because the testimony of one witness cannot establish that another witness understood and applied the proper standard, the testimony of Holcomb's experts is insufficient to satisfy Blevens's burden of proof.

Finally, Blevens argues that defense counsel, in his closing argument, conceded that Blevens's experts applied the proper standard when defense counsel stated that plaintiff's experts had testified concerning Dr. Holcomb's alleged "negligence." (T. Tr. at 572-73). Blevens contends that because the jury was instructed that "negligence" means a failure to use "that degree of skill and learning ordinarily used under the same or similar circumstances by members of those respective professions," (R. Doc. 78, Jury Instruction No. 13), counsel's reference to testimony from Drs. Fleischer and Helikson concerning alleged "negligence" necessarily implied a concession that those witnesses applied the correct standard of care. We find this contention unpersuasive. Counsel's arguments were not evidence, (R. Doc. 78, Jury Instruction No. 2), and a passing statement in closing argument cannot cure an evidentiary deficiency in the plaintiff's case. While a defense expert may concede that the legal standard is the standard suggested by a plaintiff's expert, even where the plaintiff's expert did not properly identify the standard of care, *Ladish*, 879 S.W.2d at 634, this sort of concession requires evidence from a defense witness that the standard of care proffered by the plaintiff is indeed dictated by use of the degree of

skill and learning ordinarily used in the circumstances by members of the profession. Counsel's mere use of the word "negligence" during final argument, in a context unrelated to the debate about whether plaintiff's experts applied the proper standard of care, did not provide the missing foundation to show that Blevens's experts applied the proper test of professional competence.

\*     \*     \*

For these reasons, the judgment of the district court is affirmed.

_____