Inez TAYBORN and Gregory Tayborn, Plaintiffs–Appellants,

v.

Robert BURSTEIN, M.D., Defendant–Respondent.

No. 52939.

Missouri Court of Appeals, Eastern District, Division Five.

March 1, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1988.

Application to Transfer Denied May 17, 1988.

Jeanene Moenckmeier, St. Louis, for plaintiffs-appellants.

Gary P. Paul, Brinker, Doyen & Kovacs, P.C., Clayton, for defendant-respondent.

CARL R. GAERTNER, Judge.

Plaintiffs Inez and Gregory Tayborn appeal from a summary judgment in their medical malpractice action against Doctor Robert Burstein. We affirm.

Dr. Burstein treated Inez Tayborn from August 1975 to February 1982. During this time, Mrs. Tayborn continually complained of a small lump in her left breast. The doctor repeatedly reassured her that it was not a problem. During 1981 she experienced periodic pain and swelling in the left breast but the doctor continued to reassure her. Finally, on February 29, 1982[1], Dr. Burstein referred Mrs. Tayborn to Dr. Shale Rifkin, who performed a biopsy and removed her left breast.

On March 9, 1982, the day after her discharge from the hospital, Mrs. Tayborn and her husband retained William D. England, an attorney to represent them "in any and all legal claims arising out of a potential medical malpractice claim against Dr.

1. Although 1982 was not a leap year, plaintiffs' petition identified February 29, 1982 as the date of Mrs. Tayborn's referral to Dr. Rifkin. Be-cause defendant has adopted that date, we shall maintain uniformity by referring to the date as alleged.

Robert Burstein." The Tayborns gave England a history of Mrs. Tayborn's treatment by Dr. Burstein and told him that, while Mrs. Tayborn was undergoing surgery, Dr. Burstein said to Mr. Tayborn "this was the second goof he [Burstein] made that week."

With his clients' authorization, England contacted Dr. Rifkin who advised him that Mrs. Tayborn suffered from a rapidly growing breast carcinoma and that he was of the opinion that Dr. Burstein's treatment was proper. Mr. England then consulted another physician who, after reviewing the records, confirmed Dr. Rifkin's opinion. This doctor added that because the tumor had been removed before any malignancy had spread to the lymph nodes, an earlier discovery and excision of the tumor would not have affected the patient's prognosis. England advised his clients of the two negative medical opinions and informed Mrs. Tayborn by letter that, if she chose to proceed with her claim, they would next have her records reviewed by an organization which furnishes medical opinions to lawyers. This review would cost $600. The letter requested that Mrs. Tayborn advise "whether you want to spend this amount of money in order to determine whether we can ultimately obtain an expert witness who says that you have a case." Plaintiffs did not respond to this letter and had no further contact with Mr. England.

In February, 1983, Mrs. Tayborn joined a group called Reach to Recovery. After attending medical lectures, viewing films and reading pamphlets on breast cancer, she became convinced that her earlier suspicions regarding Dr. Burstein's improper treatment were correct. She consulted her present lawyers in September, 1983.

On April 11, 1985, this lawsuit was filed in the Circuit Court of the City of St. Louis [2] against Drs. Burstein and Rifkin, alleging Burstein had negligently failed to diagnose the breast cancer and that he and Rifkin fraudulently concealed the true facts.[3] It was further alleged that plaintiffs discovered defendant's fraudulent acts on September 10, 1983, the date they consulted the present attorneys. Dr. Burstein filed a motion for summary judgment based on the two year statute of limitations on actions against health care providers, § 516.105, RSMo.1986. The trial court sustained the motion. Plaintiffs appeal asserting that fraudulent concealment is an improper act tolling the statute of limitations pursuant to § 516.280, RSMo.1986.

Summary judgment is an appropriate response to a statute of limitations contention. *Hasemeier v. Metro Sales, Inc.*, 699 S.W.2d 439, 441 (Mo.App.1985) (citing *Dixon v. Shafton*, 649 S.W.2d 435, 440 (Mo. banc 1983)). The moving party retains the burden of proof and if there are any doubts as to the facts summary judgment is unwarranted. *State v. Highway Com'n. v. Keeley*, 715 S.W.2d 338, 339 (Mo.App.1986). However, even viewing the record in the light most favorable to plaintiffs, *Ventimiglia v. Cutter Laboratories*, 708 S.W.2d 772, 775 (Mo.App.1986), we can find no error in the trial court's order.

Section 516.105, RSMo.1986, sets the statute of limitations in medical malpractice cases at two years from the date of the occurrence. In many medical malpractice cases, the statute will not begin to run until the date the defendant ceases to treat the plaintiff for the negligent injury. *Ventimiglia*, 708 S.W.2d at 774. In plaintiffs' case, this would start the two year period on February 29, 1982. Thus, plaintiffs' action is untimely unless section 516.280 applies to toll the statute of limitations.

The saving feature of § 516.280 is triggered by a defendant's "improper act [which] prevent[s] the commencement of an action." Fraudulent concealment of facts giving rise to a cause of action for medical

**2.** Although not clear from the record before us, plaintiffs apparently filed an earlier action in January 1985, in the Circuit Court of St. Louis County. This action was either dismissed by the court on motion of defendant or voluntarily dismissed by plaintiffs. The effect of the earlier action was not considered by the trial court in ruling upon the instant motion for summary judgment and it is, therefore, not before us.

**3.** Plaintiffs subsequently voluntarily dismissed their claim against Dr. Rifkin.

malpractice may constitute such an improper act. *Smile v. Lawson,* 435 S.W.2d 325, 327 (Mo. banc 1968). It is equally well established that a plaintiff who relies upon fraudulent concealment to toll the statute of limitations has the burden of proving each of the following six elements:

(1) In treating the plaintiff, the doctor did or failed to do something which caused the injury;

(2) The doctor's conduct failed to meet the required standards of professional competence and was therefore negligent;

(3) The doctor had actual knowledge that he caused the injury;

(4) With that knowledge the doctor intended by his post-injury conduct and statements to conceal from the patient the existence of a claim for malpractice;

(5) The doctor's acts were fraudulent; and

(6) Patient was not guilty of a lack of diligence in sooner ascertaining the truth. *Swope v. Printz,* 468 S.W.2d 34, 38–9 (Mo. 1971); *Clair v. Reproductive Health Services,* 720 S.W.2d 793, 795 (Mo.App.1986); *Sanders v. H. Nouri, M.D., Inc.,* 688 S.W. 2d 24, 27 (Mo.App.1985); *Hershley v. Brown,* 655 S.W.2d 671, 676 (Mo.App.1983); *Brewington v. Raksakulthi,* 584 S.W.2d 112, 114 (Mo.App.1979).

Nothing in the evidence presented to the trial court even remotely tends to support plaintiffs' burden of proving that Dr. Burstein, by his conduct or statements, intentionally concealed from plaintiffs the existence of a malpractice claim. Indeed, plaintiffs do not allege that they ever learned of any new facts; they only allege that, through participation in the Reach to Recovery program, Mrs. Tayborn reached a conclusion which confirmed her earlier suspicion based upon previously known facts. Even if it be assumed that Dr. Burstein had a duty to speak, *see Kauchick v.*

*Williams,* 435 S.W.2d 342, 348 (Mo. banc 1968), no breach thereof is shown in view of the evidence that the doctor told Gregory Tayborn he had "goofed."

Additionally, fraudulent concealment only applies to defendant's conduct which prevents "commencement of an action." § 516.280 RSMo, 1986. Consequently, when determining if fraudulent concealment tolls the statute of limitations, a pivotal issue is when plaintiff realized she had a cause of action. *See Ahearn v. Lafayette Pharmacal, Inc.,* 729 S.W.2d 501 (Mo. App.1987). Fraudulent concealment is inapplicable if plaintiff knows or should know she has a cause of action. *Hasenyager v. Bd. of Police Com'rs of Kansas City,* 606 S.W.2d 468, 471 (Mo.App.1980).

Under the undisputed facts of this case, it is clear that the Tayborns knew or should have known that they had a cause of action in 1982 so as to nullify any fraudulent concealment by Dr. Burstein. The day after Mrs. Tayborn left the hospital, she and Mr. Tayborn retained an attorney to investigate a medical malpractice claim. Mrs. Tayborn, in both her deposition and petition, admits she went to see Mr. England because she felt Dr. Burstein "had done something wrong." Plaintiffs contend the statute of limitations did not begin to run until they became "aware of the true nature and extent of their cause of action and fraudulent concealment [when] they visited their second attorney in September of 1983." To toll the statute of limitations until plaintiffs are informed they could prevail on their claim would render such statutes meaningless.

The facts of the instant case are not remotely comparable to the facts of any of the authorities plaintiffs rely upon. In each of these cases the doctor either misled his patients or failed to advise the patient of the true facts about which the patient could have no knowledge.[4]

---

**4.** In *Clair v. Reproductive Health Services, supra,* the doctor who performed an abortion on a non-pregnant patient failed to tell her no fetus had been aborted and concealed medical records. In *Sanders v. Nouri, supra,* and in *Hershley v. Brown, supra,* the doctors concealed that they had performed a surgical procedure different than that to which the patient had consented. In *Brewington v. Raksakulthi, supra,* the doctor repeatedly told the patient that her post-operative problems were not serious and urgent in order to prevent the patient from discovering the facts underlying a claim for malpractice. In *Swope v. Printz, supra,* a sur-

The judgment of the trial court is affirmed.

SATZ, C.J., and SIMEONE, J., concur.

geon failed to disclose to his patient that he had injured nerves during surgery, repeatedly assured her of eventual recovery and urged her not to seek other medical advice.