■ DEBORAH J. STOREY, Individually and as Administratrix of the Estate of RONALD W. STOREY, Deceased, Respondent, v PAUL W. SUM, Defendant, and SALAMANCA DISTRICT HOSPITAL et al., Appellants.—Order reversed on the law without costs. Memorandum: Special Term erred in denying defendant hospital, nurses and technicians' motion to dismiss the complaint

as untimely. Decedent Ronald Storey was admitted to the emergency room of defendant hospital on July 14, 1986 and died approximately one hour later. Plaintiff's action was commenced on February 29, 1988, which was admittedly beyond the expiration of the applicable Statute of Limitations for these defendants *(see,* Public Authorities Law § 1777 [2]). Defendants moved to dismiss the complaint based on plaintiff's failure to commence a timely action or serve a notice of claim and plaintiff cross-moved for leave to file a late notice of claim. Special Term denied defendants' motion and granted plaintiff's cross motion based on the doctrine of equitable estoppel.

We conclude that there are no legally dispositive facts in dispute sufficient to support plaintiff's fraudulent concealment claims *(see, Rizk v Cohen,* 73 NY2d 98). The statement by defendant Dr. Sum to plaintiff immediately after her husband's death that "we did everything we could, but we lost him" is insufficient to warrant application of the equitable remedy of estoppel to excuse plaintiff's failure to commence a timely wrongful death action or serve a timely notice of claim. This type of relief is in the nature of an extraordinary remedy that should "be invoked sparingly and only under exceptional circumstances" *(Matter of Gross v New York City Health & Hosps. Corp.,* 122 AD2d 793, 794). Dr. Sum's statement was not "calculated to mislead" plaintiff *(Arbutina v Bahuleyan,* 75 AD2d 84, 86). Neither does the statement evidence a purposeful concealment and misrepresentation of the facts, as is required for the granting of this relief *(see, McIvor v Di Benedetto,* 121 AD2d 519). To hold otherwise would be to render meaningless the Statute of Limitations defense in most medical malpractice cases. Such words, or their like, are customarily spoken by physicians when notifying loved ones of a patient's death. These words are in the nature of a condolence and are not intended to be words of warranty to be literally relied upon.

This case is clearly distinguishable from those cases where it has been held that it was grossly inequitable to permit a defendant in a medical malpractice action to employ the Statute of Limitations defense. In *Simcuski v Saeli* (44 NY2d 442) the doctor affirmatively misled plaintiff regarding her true condition, thereby dissuading her from pursuing her legal rights beyond the statutory limitation period, by telling her that her condition, which he had negligently caused, would improve with physiotherapy treatment when he knew this was not the case. In *Arbutina v Bahuleyan (supra)* the hospi-

tal prevented plaintiff from reviewing its records until shortly before the Statute of Limitations period had run.

In each of these cases, the defendants, through their affirmative misconduct, successfully prevented the plaintiffs from timely commencing a medical malpractice action. There has been no such affirmative misconduct exhibited by defendants in this case. A doctor is under a continuing duty to do everything reasonably necessary to save a life entrusted to his care. Had Dr. Sum said nothing, there is an implied assurance that he did all that he could to save the life of his patient. A mere mouthing that he did everything possible to save Mr. Storey's life should not increase his liability or leave him open forever to suit. Plaintiff had no less reason to commence an inquiry into the causes of her husband's death by Dr. Sum's statement than if he had said nothing. To hold differently is, in effect, ruling that a doctor is under an obligation to reveal all possible acts of malpractice (see, Golia v Health Ins. Plan, 6 AD2d 884, 885 [and cases cited therein], affd 7 NY2d 931). The Court of Appeals in Simcuski v Saeli (supra) reaffirmed its long-standing position that a doctor is under no such affirmative duty.

While harsh in result, there is nothing that distinguishes this case from the many cases that have held that ignorance of the act of malpractice does not toll the running of the Statute of Limitations or the notice requirements under General Municipal Law § 50-e (see, Askew v City of New York, 70 AD2d 942).

Accordingly, defendants' motion to dismiss the complaint is granted.

All concur, except Callahan, J. P., and Doerr, J., who dissent and vote to affirm, in the following memorandum.

Callahan, J. P., and Doerr, J. (dissenting). We respectfully dissent. It is well settled that a defendant in a malpractice action may be equitably estopped from relying on the Statute of Limitations as a defense to plaintiff's action "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (Simcuski v Saeli, 44 NY2d 442, 449). This court has held that "[p]laintiff need not prove that defendant is guilty of actual fraud or intent to deceive; whether he intended a wrong is immaterial. If defendant's conduct was calculated to mislead and plaintiff relied upon it, that is enough and the estoppel is imposed to prevent him from obtaining an unconscionable advantage" (Arbutina v Bahuleyan, 75 AD2d 84, 86 [Simons, J.]).

In the present case, the allegations in plaintiff's affidavit submitted in opposition to defendants' motion to dismiss on Statute of Limitations grounds are sufficient to make out a prima facie case of estoppel *(see, Schirano v Paggioli,* 99 AD2d 802, 804; *cf., Immediate v St. John's Queens Hosp.,* 48 NY2d 671, *rearg denied* 48 NY2d 975).

On July 14, 1986, plaintiff brought her 43-year-old husband to the emergency room of defendant hospital. He was suffering from chest pains and nausea, with tingling and numbness in his left arm. Plaintiff's husband began to experience a condition known as ventricular fibrillation. According to the State Department of Health report on this incident, the standard treatment for this condition is electrical defibrillation; however, "this was not performed because the physician covering the Emergency Room did not possess the clinical competence and technical skills needed to operate the defibrillator." Plaintiff's husband died less than an hour after he arrived at the hospital. After his patient died, the physician covering the emergency room told plaintiff that everything that could be done was done to save her husband. Plaintiff found out that the care her husband had received in the emergency room of defendant hospital was shockingly substandard approximately a year and a half after her husband's death, when she read a newspaper story indicating that defendant hospital had been fined by the State Department of Health for deficiencies in care related to the manner in which plaintiff's husband's case was handled. The State report specifically found that the physician employed by defendant hospital to cover the emergency room on the night in question was "not properly qualified or clinically competent to receive full Emergency Room privileges."

In her affidavit, plaintiff stated that, after the death of her husband, she was told by the physician that they did everything they could, but they lost him. This was the same physician who did not use electrical defibrillation, although this procedure was clinically called for in this situation, because he was unable to operate the equipment. In our view, a question of fact has been raised concerning whether the hospital should be equitably estopped from asserting the Statute of Limitations as an affirmative defense to plaintiff's complaint *(see, McIvor v Di Benedetto,* 121 AD2d 519, 523; *Schirano v Paggioli, supra,* at 804; *Century Fed. Sav. & Loan Assn. v Net Realty Holding Trust,* 87 AD2d 858). Although in many cases, a physician's reasonable assurance to a distraught family member that everything had been done to save the

patient will not be sufficient to support an estoppel, in the present case, where the physician making the assurances knew that the one treatment that could have possibly saved the life of the patient was not utilized because he was unable to operate the equipment, a jury should determine whether this statement was calculated to mislead and whether plaintiff's reliance upon it was reasonable. (Appeal from order of Supreme Court, Cattaraugus County, Ricotta, J.—late notice of claim.) Present—Callahan, J. P., Doerr, Boomer, Lawton and Davis, JJ.