Michelle and Gregory WILSON,
Plaintiffs–Appellants,

v.

Dr. Darwin JACKSON and Jewish
Hospital, Defendants–
Respondents.

No. 60157.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 28, 1992.

Charles E. Foehner II, St. Louis, for plaintiffs-appellants.

Michael J. McDonnell, Robert Solomon Rosenthal, David P. Ellington, Cheryl L. Eia, St. Louis, for defendants-respondents.

GARY M. GAERTNER, Judge.

Appellants, Michelle and Gregory Wilson, appeal an order of the Circuit Court of the City of St. Louis granting summary judgment in favor of respondents, Dr. Darwin Jackson and Jewish Hospital, in this wrongful death case. We affirm.

On October 14, 1987, appellant Michelle Wilson was admitted to Jewish Hospital for the elective induction of labor. Shortly after 7:30 a.m., labor was induced by use of the drug Oxytocin. Although some cervical dilation occurred initially, examinations performed on Mrs. Wilson later in the day indicated no change in dilation and no commencement of labor. Drug induced labor was continued and Kandice Wilson was born at approximately 9:45 a.m. on October 15, 1987.

Some time during the induced labor, Michelle Wilson developed E–Coli Sepsis, a bacterial infection. The infection also infected the child. On October 30, 1987, the child died as a result of the E–Coli Sepsis.

On December 18, 1990, more than six weeks after the statute of limitations under RSMo § 537.100 expired, appellants filed their petition against respondents alleging the E–Coli Sepsis was the result of negligence on the part of the respondents. On January 2, 1991, appellants filed their first amended petition alleging the statute of limitations was tolled due to fraudulent concealment on the part of the respondents. In this claim, appellants allege Dr. Jackson and members of the Jewish Hospital staff indicated to appellants that all that could be done had been done, no mistakes had been made and that it was God's will the child should die.

On February 7, 1991, Dr. Jackson filed a motion for summary judgment alleging appellants' action was barred by the statute of limitations. A similar motion was filed by Jewish Hospital on March 4, 1991. The trial court sustained Dr. Jackson's motion on March 6, 1991, and Jewish Hospital's motion on April 3, 1991. This appeal followed.

■ Summary judgment is an appropriate response to a statute of limitations contention. *Tayborn v. Burstein,* 748 S.W.2d 824, 825 (Mo.App., E.D.1988). In reviewing whether it was proper for the trial court to grant the motion for summary judgment, this court considers the record in the light most favorable to the party against whom summary judgment was entered. *Ventimiglia v. Cutter Laboratories,* 708 S.W.2d 772, 775 (Mo.App., E.D.1986). Where a motion for summary judgment is filed and supported as provided in Rule 74.04, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). It is not enough for an adverse party to show that a genuine issue of fact might exist, instead, it must be shown that a genuine issue of fact *does* exist. *I.H. Garms & Sons Co. v. Potashnick Const., Inc.,* 781 S.W.2d 203, 205 (Mo. App., E.D.1989).

■ RSMo § 516.105 (1986) provides for a two year statute of limitations in medical malpractice cases. RSMo § 537.100 (1986) provides for a three years statute of limitations in wrongful death cases. Where a wrongful death action is brought on the basis of alleged medical malpractice, the longer, three year statute of limitations applies. *Gramlich v. Travelers Ins. Co.,* 640 S.W.2d 180, 186 (Mo.App., E.D.1982); RSMo § 537.100 (1986). Because appellants brought their claim more than three years after Kandice Wilson's death, RSMo § 537.100 would bar appellants' action unless the statute of limitations was tolled.

■ Appellants have sought to avoid the statute of limitations by application of RSMo § 516.280 (1986). This section provides:

If any person, by absconding himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented.

RSMo § 516.280 1986). Appellants allege that respondents, by informing them that

**514**

all that could be done had been done and that the death of the child was an act of God, fraudulently concealed their malpractice and that this action tolled the statute of limitations.

Fraudulent concealment is an "improper act" within the meaning of RSMo § 516.280 (1986). *Smile v. Lawson,* 435 S.W.2d 325, 327 (Mo. banc 1968). To show fraudulent concealment, a plaintiff must show:

(1) In treating the plaintiff, the doctor did or failed to do something which caused the injury;

(2) The doctor's conduct failed to meet the required standards of professional competence and was therefore negligent;

(3) The doctor had actual knowledge that he caused the injury;

(4) With that knowledge the doctor intended by his post-injury conduct and statements to conceal from the patient the existence of a claim for malpractice;

(5) The doctor's acts were fraudulent; and

(6) Patient was not guilty of a lack of diligence in sooner ascertaining the truth.

*Swope v. Printz,* 468 S.W.2d 34, 38–9 (Mo. 1971); *Miller v. Guze,* 820 S.W.2d 576 at 578 (Mo.App., E.D.1991). We find that appellants cannot show these six elements.

We first note that the statements which appellant claims "fraudulently concealed" the respondents' malpractice do not rise to the level of purposeful concealment and misrepresentation. Such words "are customarily spoken by physicians when notifying loved ones of a patient's death. These words are in the nature of a condolence and are not intended to be words of warranty to be literally relied upon." *Storey v. Sum,* 151 A.D.2d 991, 542 N.Y.S.2d 430, 431 (4 Dept.1989). Were this court to hold that such statements as "it was an act of God" or "we did all we could do" were purposeful concealment of malpractice, we would be doing away with the statute of limitations in most medical malpractice cases. A physician's choice would be limited to silence or forever being left open to suit.

Appellant contends that the present case is similar to *Brewington v. Raksakulthi,* 584 S.W.2d 112 (Mo.App., E.D.1979). We disagree.

In *Brewington,* the defendant made several incisions in the plaintiff's vagina, birth canal, rectum, colon, peritoneum and lower intestinal tract and failed to properly close the incisions. *Brewington,* 584 S.W.2d at 113. The plaintiff visited the physician on several occasions afterward complaining of pain, leakage into her vagina and inability to control bowel movements. *Id.* On each occasion, the defendant told her that the problems were normal and that she would get better with time. *Id.* This continued for several months before the plaintiff consulted another physician and was informed of the true severity of her injuries. *Id.* at 113–14.

In *Brewington,* the court had no trouble finding fraudulent concealment. The physician engaged in a continuous attempt to mislead the plaintiff as to the severity of her injuries in what was clearly an attempt to hide his own negligence. The comments in the present case certainly do not rise to such a level and *Brewington* is clearly not applicable here.

■ We also note that appellants failed to exercise due diligence in pursuing their claim. All of the facts currently known to the appellants were either known to them at the time of the alleged medical malpractice or were matters of record. There are no allegations that either of the respondents denied access to medical records to appellants, nor is there any allegation that the appellants learned of new facts that had previously been concealed to them. The plaintiff knew that respondents had attempted to induce labor for more than twenty-four hours, knew that she had contracted an infection, knew that the infection spread to the child and knew that the child died as a result of the infection. Appellants had no less reason for conducting an inquiry into their child's death due to the respondents' comments than if nothing had been said at all. Appellants merely chose not to do so.

The decision of the trial court is affirmed.

REINHARD, P.J., and CRANE, J., concur.