

# Missouri Court of Appeals
## Southern District

### In Division

A.O., Individually,

      Plaintiff-Appellant,

v.

LESTER E. COX MEDICAL CENTERS,
d/b/a COX MEDICAL CENTER SOUTH,
and COXHEALTH,

      Defendants-Respondents.

Nos. SD38390 & SD38397

Filed: July 23, 2025

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Daniel R. Wichmer, Circuit Judge

### **AFFIRMED**

A.O. (hereinafter referred to as A.O. or Plaintiff) appeals from a summary judgment granted in favor of Lester E. Cox Medical Centers, d/b/a Cox Medical Center South, and CoxHealth (hereinafter referred to collectively as Defendants, and individually as Cox South and CoxHealth). A.O. presents five points on appeal. The first four points contend the trial court erred by granting summary judgment, and the fifth point contends the case should have

been dismissed without prejudice pursuant to § 538.225.[1]  Because none of these points have merit, we affirm.

## Factual and Procedural Background

A.O. filed her initial petition on July 9, 2021.  Cox South and CoxHealth were two of the four named defendants.[2]  In relevant part, the petition alleged:

1.  On October 26, 2020, A.O. was a Cox patient receiving medical care at the allergy/immunology clinic for allergy shot treatment.

2.  Defendants employed K.T. to work as a certified medical assistant on October 26, 2020, and he was responsible for providing care to A.O.

3.  K.T. was acting within the course and scope of his employment by Defendants.

4.  K.T. was in the room when A.O. started to feel lightheaded after the allergy injection.  A doctor came into the room and told A.O. to lie down on the table.  Once the doctor left, A.O. started to feel itchy and numb on her chest and legs.

5.  K.T. lifted A.O.'s shirt and squeezed and rubbed her breasts.  K.T. asked A.O. to take off her bra.  He touched her breasts again and squeezed, acting like he was searching for hives.

6.  K.T. told A.O. to take off her pants so that he could check for hives.  He told A.O. to get onto her hands and knees on the table, and he used his ungloved hands to feel her vagina and in and around her rectum without consent.

7.  K.T. told A.O. to lie back down, and he used his hand on her knees to separate both legs and used his ungloved fingers to move her underwear and put his hands on her vagina.

8.  That same day, A.O. reported these events to the police and Defendants.

9.  A few months earlier, K.T. had assaulted another woman and was neither punished nor fired after the incident was reported to Defendants.

_____

[1]  All statutory references are to RSMo (2016), unless otherwise specified.  All rule references are to Missouri Court Rules (2024).

[2]  A.O. subsequently dismissed all claims against the two other named defendants, Cox Medical Group and Ferrell-Duncan Clinic.

2

The petition alleged four theories of recovery. Count 1 alleged a theory of negligent hiring and retention. In that count, A.O. alleged that Defendants "owed Plaintiff a duty of care to exercise that degree of skill and learning ordinarily used by members of their profession under the same or similar circumstances" as defined by MAI – Civil 11.06.[3] Count 2 alleged a general negligence theory and used the same definition of negligence for a health care provider. In addition, Count 2 alleged that Defendants were negligent in the care and treatment of A.O. in 11 different respects. Count 3 alleged a theory of recovery based on negligent supervision of K.T. and used the same definition of negligence for a health care provider. Count 4 alleged a theory of recovery based on failure to protect and supervise A.O. and incorporated by reference the definition of negligence used in the other counts. This count also alleged that A.O. "was in a weak condition, both mentally and physically, when under the care of Cox and Ferrell-Duncan's facility. Defendants Cox and Ferrell-Duncan were aware of Plaintiff's weakened condition and were entrusted to properly take care of, protect, and supervise Plaintiff and provide for her safety." All four counts alleged that the negligence of Defendants directly caused, or directly contributed to cause, damage to A.O. In the joint answer filed by all defendants, Cox South admitted that K.T. was its employee on October 26, 2020, and that he had provided medical care to A.O.

A.O. requested a jury trial setting, and extensive discovery was conducted. On December 8, 2022, the case was set for a four-day trial commencing on October 30, 2023.

---

[3] MAI – Civil 11.06 (8th ed. 2020) states: "The term 'negligent' or 'negligence' as used in this [these] instruction[s] means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession." *Id*. All references in this opinion to MAI – Civil 11.06 are to this edition.

3

The parties agreed to submit a discovery schedule. The scheduling order required A.O. to disclose all expert witnesses by April 3, 2023.

On December 15, 2022, Defendants filed a motion to dismiss without prejudice pursuant to § 538.225. The motion alleged that A.O. was pursuing a medical negligence case against Defendants and had not filed a timely affidavit "certifying merit of [the] case" (affidavit of merit), as required by that statute.[4]

On February 3, 2023, A.O. requested leave to file an amended petition. At a hearing in March 2023, the trial court took both Defendants' motion to dismiss and Plaintiff's motion for leave to file an amended petition under advisement. On April 12, 2023, the court entered the following order:

> The Court now grants [P]laintiff leave to file an affidavit, or affidavits in support of her petition as required by Ch. 538. Plaintiff is ordered to file the compliant affidavit(s) within 30 days. If the compliant affidavit(s) are filed, Defendants['] Motion to Dismiss will be denied. If [P]laintiff fails or chooses not to file compliant affidavit(s), Defendants['] Motion to Dismiss will thereafter be granted. Plaintiff['s] Motion for Leave to file an Amended Petition is granted. Amended Petition to be filed within 30 days.

A.O. filed her first-amended petition on April 24, 2023. Cox South and CoxHealth were the only named defendants. The substantive factual allegations were essentially the same as those contained in A.O.'s initial petition, and the same four theories of recovery were

---

[4] This procedural requirement is in § 538.225.1, which states:

In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

alleged. All four counts continued to use the MAI – Civil 11.06 definition of negligence for a health care provider.

On May 9, 2023, A.O. filed two § 538.225 affidavits of merit. One affidavit referenced non-physician, human resources expert Stephanie Nelson (Nelson). The second affidavit referenced Brett Miller, M.D. (Dr. Miller), who was a licensed physician practicing in Missouri.

On May 15, 2023, Cox South renewed its motion to dismiss. The motion alleged that neither affidavit of merit complied with § 538.225 because: (1) Nelson had no medical licensure; and (2) Dr. Miller, an orthopedic surgeon, did not actively practice in substantially the same specialty as did Defendants' clinic.

On August 1, 2023, Cox South filed a motion for summary judgment. The stated legal basis for the motion was that A.O. "has failed to produce any competent medical expert testimony establishing the requisite elements of her medical negligence actions alleged in the First Amended Petition." Cox South also filed its statement of uncontroverted material facts (SUMF) consisting of 22 paragraphs. Paragraphs 1-2, 5-9, 14-15, and 21 recited allegations from the original and first-amended petitions. The SUMF also included the following paragraphs:

> 3. On October 26, 2020, [P]laintiff was receiving medical care at the allergy/immunology clinic for allergy shot treatment[.]
>
> 4. [K.T.] was employed as a certified medical assistant on October 26, 2020, and he was responsible for providing care to [P]laintiff[.]
> ….
>
> 10. Plaintiff has not disclosed any medical experts to support her medical negligence claims against defendant [Cox South]. (*See* [P]laintiff's Supplemental Answers to Interrogatories attached as Exhibit A).

5

11. Plaintiff disclosed HR expert, [Nelson], who has an MBA, to address standards of performing background searches on [K.T.] prior to hiring him, [Cox South's] deficiencies in properly hiring and retaining existing employees and properly investigating issues/complaints made by employees/patients of [K.T.] during his employment. (See Exhibit A).

12. During her deposition, [Nelson] admitted that she is not a medical doctor and has no healthcare license of any kind. (See deposition of [Nelson] attached as Exhibit B, p. 75)[.]

13. Plaintiff disclosed psychologist, Lauren [Richerson,] to address the psychological damages [P]laintiff allegedly sustained as a result of the sexual assault and non retained expert and counselor … from the Victim Center to address [P]laintiff's psychological symptoms and issues following the alleged assault. (See Exhibit A).
….

21. Plaintiff's alleged assault occurred on October 26, 2020, over five months after the alleged May 2020 incident involving [K.T.] and another patient.

Paragraphs 16-20 and 22 related to specific testimony given by Nelson in her deposition.

In A.O.'s response, she admitted paragraphs 3-4, 11-13 and 21 of Cox South's SUMF.

With respect to paragraph 10, A.O. denied it and attached an affidavit from Dr. Miller outlining his opinions. A.O.'s response also contained the following additional SUMF (with record citations omitted):

23. Plaintiff has retained Dr. Lauren Richerson who has testified that the assault by [K.T.] at Cox Hospital has directly caused or contributed to cause damages to Plaintiff.

24. [K.T.] sexually abused Plaintiff by touching her breast, vagina, and anus after [P]laintiff had an allergic reaction at Cox Hospital.

25. [Cox South's] corporate representative, Corrine Fugitt, testified that it would be a violation [of] Cox's policies and procedures if a CMA [certified medical assistant] inspected a patient's genitals before consulting with the doctor or provider in charge.

26. [Cox South's] employee, Dr. Le, testified that it would be a violation of policies for a CMA to inspect a patient's genitals without the patient making a complaint of symptoms in the genital area.

6

27. Plaintiff never complained of any symptoms in her genital area.

28. Cox's Allergy Injection Reaction Protocol policies [lay] out an "action plan" for when a patient has an allergic reaction, which states that the first step is to "get a provider and other appropriate help in the office."

29. Plaintiff filed an affidavit of merit on May 9, 2023, that identifies [Dr. Miller] and states that he opines that [Cox South] failed to use such reasonable care as a reasonably prudent and careful health care provider would have utilized under similar circumstances and that such failure to use reasonable care directly caused or directly contributed to cause the damages claimed in Plaintiff's Petition.

30. Cox should have immediately placed [K.T.] on leave while Cox conducted an investigation. Further, based on documents produced by Cox, [K.T.] should have been terminated after the May 4, 2020 assault. Failing to terminate [K.T.] was a violation of the applicable standard of care.

31. [K.T.] sexually assaulted [another patient] P.J. on May 4, 2020, at Cox Hospital, by touching her breasts. P.J. had to physically push [K.T.'s] hands off of her breasts. [K.T.] also sexually assaulted P.J. by touching her inner thigh to the point she had to physical[ly] stop him again. All of this abuse was directly reported to Cox Hospital the same day of the assault.

32. Plaintiff hired an HR expert, [Nelson], to do an analysis of [Cox South's] hiring and retention of the perpetrator, [K.T.] This expert witness opined during her deposition that when the May 2020 victim of sexual assault made a report to Cox Hospital, [Cox South] should have immediately placed the alleged perpetrator on administrative leave. She also opined that [Cox South] should have terminated [K.T.] once the investigation was complete, based on the documents that have been produced to Plaintiff by [Cox South].

In Cox South's reply, it admitted the factual components of paragraphs 23, 29 and 30.

It denied (with citations to the record) paragraphs 24, 25, 26, 27, 28, 31, and 32.

On October 2, 2023, A.O. voluntarily dismissed Count 2 of the first-amended petition.

On October 4, 2023, A.O. filed a motion for leave to supplement her expert designations to include Dr. Miller. That same day, A.O. filed an amended witness list that included Dr. Miller's name. Defendants opposed the motion because the proposed supplementation was

7

only 17 days before trial, and A.O. was required to have disclosed Dr. Miller as an expert by April 3, 2023.

On October 11, 2023, the trial court held a hearing on A.O.'s motion to designate an expert out of time and Cox South's motion for summary judgment. The trial court made the following rulings: "PreTrial conference hearing held. Court denies Plaintiff's Motion to designate expert out of time. Court grants Motion for summary Judgment. Formal Judgment to follow. Jury Trial setting on 10/30/2023 is quashed."

On October 20, 2023, the trial court entered its judgment (Judgment). The court first identified the following undisputed facts upon which its ruling was based:

> 1. On October 26, 2020, Plaintiff A.O. was receiving medical care at an allergy/immunology clinic owned and operated by Defendant [Cox South].
>
> 2. K.T. was employed by Defendant [Cox South] as a certified medical assistant on October 26, 2020, and he was responsible for providing care to Plaintiff.
>
> 3. Plaintiff received an allergy shot, developed an allergic reaction and was placed under observation with K.T. being placed in an observation room with Plaintiff.
>
> 4. At times during the period of observation, K.T. asked Plaintiff to remove or lower her shirt, lower her pants and bra. This resulted in A.O. having her breasts, vagina and anus exposed and touched by K.T.
>
> 5. Plaintiff stated at deposition that when these actions were being taken, K.T. told Plaintiff he was checking for hives.
> ….
>
> 9. Plaintiff did not timely disclose any medical experts to testify whether K.T.'s actions toward Plaintiff failed to meet the standard of care.

The trial court next decided A.O.'s claim involved the delivery of health care services, which involved a question of professional medical judgment, for the following reasons:

> In the instant case, there is no dispute that Plaintiff was present at Defendant [Cox South's] allergy clinic. It is also undisputed that Plaintiff had an allergic

8

reaction after receiving a shot. It is undisputed that [P]laintiff was placed under observation by Defendant [Cox South's] personnel and that K.T. was ordered to monitor Plaintiff to determine if the allergic reaction worsened. K.T.'s observation activities are at issue, but Plaintiff concedes that while K.T. was examining her, K.T.'s statements to Plaintiff were that he was taking his actions in order to check for hives.

While K.T.'s actions may have been completely inappropriate, Plaintiff needs a medical expert to testify why and how K.T.'s actions were improper in terms of checking for hives, since K.T.'s alleged basis for his actions was that he was examining Plaintiff for an allergic reaction. That is an exercise of medical judgment necessitating a medical expert opining on the proper standard of care in examining a patient for an allergic reaction. Without that testimony, Plaintiff cannot establish that K.T.'s actions fell below the standard, thereby injuring Plaintiff.

After entry of Judgment based upon the ruling on Cox South's motion for summary judgment, a number of other filings were made by A.O. and CoxHealth. On January 30, 2024, the trial court entered a document labeled as an "Amended Judgment" (amended judgment), but its purpose was to more fully explain what had been ruled in the October 20th Judgment. The trial court noted that it "entered a Judgment on October 20, 2023, which disposed of all claims of all parties. The thirty-day period of Rule 75.01 expired without any authorized after-trial motions being filed, making that Judgment final." The court further explained that:

Before the October 20 Judgment, the parties and the Court all proceeded under the understanding that the previously pending motions were dispositive as to all parties. Plaintiff's original Petition, dated July 9, 2021, alleged that multiple defendants were employers of employee K.T. on the date of the alleged tortious conduct by K.T. The Answer of Defendant [Cox South], dated August 18, 2021, specifically admitted that K.T. was employed by [Cox South]. Thereafter, throughout the course of this case, Plaintiff and [Cox South] proceeded with discovery, motions and briefing on the premise that [Cox South] was the only proper corporate defendant, as outlined in the Suggestions in Opposition to Plaintiff's Motion for Default Judgment filed by defendant [CoxHealth] on December 4, 2023.

Likewise, as part of its Motion for Summary Judgment filed on August 1, 2023, Paragraph 4 of the [SUMF] filed by [Cox South] stated as an uncontroverted fact that K.T. was employed by [Cox South]. In her Response to Paragraph 4 of the [SUMF], Plaintiff admitted that [Cox South] employed K.T. Further,

9

Plaintiff's own [SUMF] fails to allege that K.T. was employed by any entity other than [Cox South].

Finally, Plaintiff did not object to the Court's striking of Plaintiff's October 30, 2023 trial setting in light of the Court's announcement to the parties that the Court's grant of Summary Judgment in favor of Defendant [Cox South] disposed of all claims and parties. The Court also notes that its Judgment dated October 20, 2023, is intentionally denominated as a "Judgment", and paragraph 2 of the Court's Judgment ruled that K.T. was employed by [Cox South]. There are no issues or parties that the Court's Judgment dated October 20, 2023, has not fully adjudicated. Because the October 20 Judgment finally adjudicated all claims of all parties, the Court believes it cannot properly consider any motions filed after the date that Judgment became final.

The court's analysis of this issue is correct. The trial court's authority to take any further action in the case expired 30 days after October 20, 2023, because no authorized after-trial motions were filed by any party. *See* Rule 81.05(a)(1) (a judgment becomes final at the expiration of 30 days after its entry if no authorized after-trial motion is filed).[5] Therefore, any substantive actions taken after that point would have been void. *See **Spicer v. Donald N. Spicer Revocable Living Trust***, 336 S.W.3d 466, 468-69 (Mo. banc 2011).

On February 5, 2024, A.O. filed a timely notice of appeal from the amended judgment. On February 14, 2024, this Court granted A.O.'s motion to allow the late filing of a notice of appeal from the original Judgment entered on October 20, 2023, and gave her 10 days to do so. Two days later, A.O. filed another notice of appeal from that October 20th Judgment. We ordered the appeals to be consolidated.

---

[5] An authorized after-trial motion is a motion for which the rules of civil procedure expressly provide. ***Taylor v. United Parcel Serv., Inc.***, 854 S.W.2d 390, 392 n.1 (Mo. banc 1993). These include "a motion to dismiss without prejudice after the introduction of evidence is commenced under Rule 67.01; a motion for a directed verdict under Rule 72.01(a); a motion for judgment notwithstanding the verdict under Rule 72.01(b); a motion to amend the judgment, Rule 73.01(a)(3); a motion for relief from judgment or order under Rule 74.06(a) and (b), but see, Rule 74.06(c); and a motion for a new trial under Rule 78." ***Taylor***, 854 S.W.2d at 392 n.1.

**Standard of Review**

The trial court granted a final summary judgment on October 20, 2023. Summary judgment shall be granted if "the motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6); *Jungers v. Webster Elec. Coop., Inc.*, 577 S.W.3d 498, 500 (Mo. App. 2019). Our review of the trial court's decision to grant summary judgment is *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). "Our *de novo* standard of review means that we look at the summary judgment issues presented on appeal as the trial court should have initially under Rule 74.04, and we give no deference to the trial court's ruling." *Great Southern Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 834 (Mo. App. 2016). We review the record in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences. *Green*, 606 S.W.3d at 115-16.

As we explained in *Martin Leigh, PC v. Williamson*, 699 S.W.3d 538 (Mo. App. 2024):

> While we apply *de novo* review to summary judgment, it does not grant an appellant a license to craft arguments free from the constraints of Rule 74.04. Rather, our *de novo* decision on appeal must be in accordance with *all* the requirements of Rule 74.04 and, therefore, must be made in the very same manner the trial court should have applied that rule in the first instance. This means that our review does not consider the entire trial court record but, instead, we *only* look to the facts from the summary judgment record as established through the non-moving party's responses to a motion for summary judgment under the numbered-paragraphs-and-responses framework. Reviewing only this summary judgment record, we must determine whether *uncontroverted* facts established via Rule 74.04(c) paragraphs and responses demonstrate the movant's right to judgment *regardless of other facts or factual disputes*.

*Id*. at 542 (internal quotation marks and citations omitted, emphasis in original).

11

Compliance with Rule 74.04 is mandatory. **Blue Chalk**, 497 S.W.3d at 828. "Under that rule, the first inquiry is the identification of the movant and whether the movant is a 'claimant,' *see* Rule 74.04(a), or a 'defending party,' *see* Rule 74.04(b)." **Blue Chalk**, 497 S.W.3d at 828. The second inquiry is whether the motion for summary judgment properly pleads all of the elements detailed in Rule 74.04(c)(1). **Blue Chalk**, 497 S.W.3d at 828. A defending party is entitled to a summary judgment if it demonstrates:

> (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense."

**City of Chesterfield v. State**, 590 S.W.3d 840, 843 (Mo. banc 2019) (internal quotation marks and citations omitted). If a defending party files a Rule 74.04 compliant motion for summary judgment, it has made a prima facie case for its right to judgment as a matter of law. **Parker v. Castle View Country Club, Inc.**, 690 S.W.3d 918, 921 (Mo. App. 2024). The burden then shifts to the non-moving party to demonstrate that one or more of the material facts is genuinely disputed. **Id**. The non-movant may not rely on a general denial in order to put a fact in genuine dispute, but must instead provide specific references to the discovery, exhibits or affidavits that demonstrate facts showing a genuine issue for trial. **Id**.

**Discussion and Decision**

*Points 1 and 2*

Because of the interrelated nature of Points 1 and 2, we address them together. Both points contend the trial court erred by entering summary judgment in favor of Defendants. A.O. argues that she was not required to present expert medical testimony regarding the requisite standard of care because: (1) the allegations in her petition do not relate solely to

12

health care; (2) they involve employment actions that should have been taken against K.T.; (3) they do not involve questions of medical judgment; and (4) they do not assert that the medical treatment she received failed to meet the requisite standard of medical care. We disagree.

We begin our analysis by reviewing § 538.210 RSMo Cum. Supp. (2024), which became effective on August 28, 2020. In relevant part, this statute states:

> A statutory cause of action for damages against a health care provider for personal injury or death arising out of the rendering of or failure to render health care services is hereby created, replacing any such common law cause of action. The elements of such cause of action are that the health care provider failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession and that such failure directly caused or contributed to cause the plaintiff's injury or death.

§ 538.210.1.[6]

A.O.'s claim arose out of the rendering of health care services on October 26, 2020, because she alleged that:

1. She was a patient at Cox South receiving medical care at the allergy/immunology clinic for allergy shot treatment.

2. Defendants employed K.T. to work as a certified medical assistant, and he was responsible for providing care to A.O.

3. K.T. was acting within the course and scope of his employment by Defendants.

4. K.T. was in the room when A.O. started to feel lightheaded after the allergy injection. A doctor came into the room and told A.O. to lie

---

[6] The phrase "health care services" is defined to mean "any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized[.]" § 538.205(7).

down on the table. Once the doctor left, A.O. started to feel itchy and numb on her chest and legs.

5. K.T. lifted A.O.'s shirt and squeezed and rubbed her breasts. K.T. asked A.O. to take off her bra. He touched her breasts again and squeezed, acting like he was searching for hives.

6. K.T. told A.O. to take off her pants so that he could check for hives. He told A.O. to get onto her hands and knees on the table, and he used his ungloved hands to feel her vagina and in and around her rectum without consent.

7. K.T. told A.O. to lie back down, and he used his hand on her knees to separate both legs and used his ungloved fingers to move her underwear and put his hands on her vagina.

Each count of A.O.'s original and first-amended petitions pled that: (1) Defendants, who were health care providers, failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession; and (2) such failure directly caused or contributed to cause Plaintiff's injuries. These are the two elements of a statutory medical negligence claim. *See* § 538.210.1; MAI – Civil 11.06 (defining negligence in an action against a health care provider using the same language as the statute). More specifically, Count 2 of the original and first-amended petitions alleged that Defendants were negligent in providing medical care to A.O. for a variety of reasons. Count 4 likewise alleged that A.O. "was in a weak condition, both mentally and physically, when under the care of [Cox South's] facility. Defendants … were aware of Plaintiff's weakened condition and were entrusted to properly take care of, protect, and supervise Plaintiff and provide for her safety." This count pled a medical negligence theory of recovery as well. *See, e.g.*, ***Spears ex rel. Clendening v. Freeman Health Sys.***, 403 S.W.3d 616, 619-20 (Mo. App. 2012) (whether medical professionals failed to adequately supervise a patient, so as to prevent a sexual assault upon him, involved a question of medical judgment).

14

To prove these theories of medical negligence, A.O. had to present expert medical testimony concerning the requisite standard of care. *See* ***Hickman v. Branson Ear, Nose & Throat, Inc.***, 256 S.W.3d 120, 124 (Mo. banc 2008); ***Washington by Washington v. Barnes Hosp.***, 897 S.W.2d 611, 615 (Mo. banc 1995); MAI – Civil 11.06. When Defendants moved to dismiss the action without prejudice for failure to comply with § 538.225, A.O.'s counsel filed an affidavit of merit stating that he had obtained a written opinion from Dr. Miller, a legally qualified health care provider, "indicating that [Defendants] failed to use such care as a reasonably prudent and careful health care provider would have utilized under similar circumstances and that such failure to use reasonable care directly caused or directly contributed to cause the damages claimed in Plaintiff's Petition."[7]

One way a defending party is entitled to summary judgment is by demonstrating that after an adequate period for discovery, the non-movant has been and will be unable to produce sufficient evidence to allow the trier of fact to find the existence of any one of the elements of the non-movant's claim. ***City of Chesterfield***, 590 S.W.3d at 843. The legal basis for Cox South's motion for summary judgment was that A.O. "has failed to produce any competent medical expert testimony establishing the requisite elements of her medical negligence actions alleged in the First Amended Petition."

As noted above, this issue was presented to the trial court via the summary judgment motion, and the judge analyzed it this way:

> In the instant case, there is no dispute that Plaintiff was present at Defendant's allergy clinic. It is also undisputed that Plaintiff had an allergic reaction after receiving a shot. It is undisputed that [P]laintiff was placed under observation by Defendant's personnel and that K.T. was ordered to monitor Plaintiff to determine if the allergic reaction worsened. K.T.'s observation activities are

---

[7] As will be explained in our analysis of Point 3, *infra*, Dr. Miller could not be called as an expert witness at trial because he had not been timely designated by A.O.'s counsel.

15

at issue, but Plaintiff concedes that while K.T. was examining her, K.T.'s statements to Plaintiff were that he was taking his actions in order to check for hives.

While K.T.'s actions may have been completely inappropriate, Plaintiff needs a medical expert to testify why and how K.T.'s actions were improper in terms of checking for hives, since K.T.'s alleged basis for his actions was that he was examining Plaintiff for an allergic reaction. That is an exercise of medical judgment necessitating a medical expert opining on the proper standard of care in examining a patient for an allergic reaction. Without that testimony, Plaintiff cannot establish that K.T.'s actions fell below the standard, thereby injuring Plaintiff.

We agree. Points 1 and 2 are denied.

*Point 3*

In Point 3, A.O. contends the trial court erred by entering summary judgment in favor of Defendants because she presented sufficient evidence regarding the requisite standards of care through expert medical testimony and expert human resources testimony. We disagree.

Our resolution of Points 1 and 2 concluded that all four counts of A.O.'s original and first-amended petitions asserted statutory medical negligence theories of recovery. *See* § 538.210.1. In other words, A.O. had to present evidence that Defendants failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of Defendants' profession. *See **Hickman***, 256 S.W.3d at 124; ***Washington***, 897 S.W.2d at 615; MAI – Civil 11.06. "The standard must be objective, that is, not merely the personal opinion of the expert, but the standard that is accepted generally in the profession." ***Hickman***, 256 S.W.3d at 124; *see **Swope v. Printz***, 468 S.W.2d 34, 39 (Mo. banc 1971). This is required because the standards of a single member of the profession may be higher or lower than the standards of the profession as a whole. *See, e.g.*, ***Pettet v. Bieterman***, 718 S.W.2d 188, 190 (Mo. App. 1986); ***Miller v. Scholl***, 594 S.W.2d 324, 329 (Mo. App. 1980). Therefore, it generally must appear somewhere in the context of the expert's testimony that

the proper objective legal standard is the standard being employed by this expert in his or her testimony. ***Ladish v. Gordon***, 879 S.W.2d 623, 634 (Mo. App. 1994). None of the potential evidence identified by A.O. during the summary judgment procedure meets this standard.

In response to Cox South's SUMF, A.O. submitted 13 exhibits. These included: (1) a psychological assessment of A.O. prepared by Dr. Lauren Richerson (Dr. Richerson); (2) pages from a deposition of Plaintiff's HR expert, Nelson; (3) pages from a deposition of Corrine Fugitt, Defendants' corporate representative; (4) one page from a deposition of Dr. Minh-Thu Le (Dr. Le), a physician employed by Cox South; and (5) an affidavit of Dr. Miller.

The evidence provided by Dr. Richerson addressed only A.O.'s alleged psychological damages. The testimony of HR expert Nelson was insufficient because she was not a medical doctor. The testimony of Cox South's corporate representative addressed only Cox South's own policies and procedures. None of her testimony used the proper objective legal standard, and testimony about Cox South's policies and procedures alone is insufficient because the standards of a single member of the profession may be higher or lower than the standards of the profession as a whole. *See, e.g.*, ***Ladish***, 879 S.W.2d at 634; ***Pettet***, 718 S.W.2d at 190; ***Miller***, 594 S.W.2d at 329. The same is true for Dr. Le. The one hypothetical question put to Dr. Le in the summary judgment record did not use the proper objective standard. According to A.O.'s SUMF, this testimony of Dr. Le related to a potential "violation of policies[.]"

Finally, Dr. Miller's affidavit was insufficient to meet the required standard under the specific circumstances presented in this case. Rule 74.04(e) specifically requires that an affidavit to support a factual assertion in a summary judgment record "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." ***Id***.;

17

*see Shiffman v. Kansas City Royals Baseball Club, LLC*, 687 S.W.3d 443, 454 (Mo. App. 2024). Here, A.O. failed to designate Dr. Miller as an expert witness by the April 3, 2023 deadline. The judge denied A.O.'s request to add Dr. Miller's name to the witness list 17 days before trial, and that ruling has not been challenged on appeal. Because Dr. Miller could not be called to testify as an expert for A.O., Dr. Miller's affidavit failed to "set forth such facts as would be admissible in evidence" because he had not been timely disclosed as an expert witness for A.O. *See Predovic v. Empire Dist. Elec. Co.*, 603 S.W.3d 366, 369 n.4 (Mo. App. 2020) (affidavit from company employee did not set forth facts that were admissible in evidence and about which he was competent to testify). Therefore, his affidavit was insufficient to create a genuine issue of material fact and must be disregarded.

For all of these reasons, A.O. failed to present sufficient expert medical testimony regarding the requisite standards of care. Point 3 is denied.

*Point 4*

In Point 4, A.O. contends the trial court erred by granting summary judgment in favor of CoxHealth because it did not join in the motion for summary judgment filed by Cox South. Under the specific circumstances presented here, we disagree.

After reviewing the record, we agree with the trial court that the parties and the court all proceeded with the understanding that Cox South's motion for summary judgment was dispositive as to all parties. In Defendants' joint answer to A.O.'s petition, Cox South admitted that it employed K.T. As the trial court correctly noted, A.O. and Cox South proceeded with discovery, motions and briefing on the premise that Cox South was the only proper corporate defendant. Paragraph 4 of Cox South's SUMF stated that it employed K.T., and A.O. admitted that fact. In A.O.'s own SUMF, she did not hypothesize that any entity

other than Cox South employed K.T. What A.O. did hypothesize was that: (1) Cox South should have placed K.T. on leave and then terminated him after the first incident involving another patient on May 4, 2020; and (2) failure to do so was a violation of the applicable medical standard of care. As K.T.'s employer, only Cox South could have taken those actions. The trial court also correctly noted that A.O. did not object to the court striking the October 30, 2023 trial setting after granting the motion for summary judgment. If Cox South's motion was not dispositive of all claims against all parties, A.O. should have objected and asked to go to trial against CoxHealth as scheduled. Accordingly, we agree with the trial court that its grant of summary judgment adjudicated all claims against all parties.

For that reason, it was not necessary for CoxHealth to file its own motion for summary judgment. We addressed essentially this same issue in *Empire Dist. Elec. Co. v. Coverdell*, 588 S.W.3d 225 (Mo. App. 2019). There, the case had been remanded to determine the plaintiff's adverse possession claim. *Id*. at 231-32. One party, HCW, filed a motion for summary judgment on that issue. *Id*. at 232. As we explained:

> Because Coverdell had to rely exclusively on the strength of his own claim of ownership to prevail, the trial court's finding that he was unable to demonstrate the requisite adverse possession elements was fatal to the entirety of his claim, regardless of which adverse party moved for judgment. The trial court's grant of HCW's motion for summary judgment resolved Coverdell's claim for adverse possession of Property A, thereby fully satisfying *Empire II*'s mandate and disposing of the only claim remaining in the case. The finding against Coverdell precluded further action in excess of *Empire II*'s directive. *See Pope* [*v. Ray*], 298 S.W.3d [53,] 57 [(Mo. App. 2009)]. Thus, the trial court was free to enter final judgment as to all parties.

*Coverdell*, 588 S.W.3d at 244. We reach the same conclusion here. Cox South's motion for summary judgment was granted because A.O. could not produce expert medical testimony to support her claim. That same deficiency applied equally to CoxHealth. Therefore, the trial

19

court was free to enter a final judgment in favor of Defendants on October 20, 2023. Point 4 is denied.

*Point 5*

In Point 5, A.O. contends the trial court erred by not dismissing the case without prejudice because she did not file an affidavit of merit within the time required by § 538.225. A.O. argues that she was prejudiced because she has been denied the ability to refile this action. Her argument lacks merit for the following reasons.

We review the issue of whether the trial court misapplied the law *de novo*. ***Prosecuting Att'y, 21st Jud. Cir., ex rel. Williams v. State***, 696 S.W.3d 853, 862 (Mo. banc 2024). In relevant part, § 538.225 states that an affidavit of merit "shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days." § 538.225.5.

Defendants were the ones who first raised this issue with the trial court by filing a motion to dismiss without prejudice pursuant to § 538.225 on December 15, 2022. On April 12, 2023, the court entered an order granting A.O. leave to file § 538.225 affidavits of merit within 30 days. The order stated that, "[i]f the compliant affidavit(s) are filed, Defendants['] Motion to Dismiss will be denied. If [P]laintiff fails or chooses not to file compliant affidavit(s), Defendants['] Motion to Dismiss will thereafter be granted." Within the time allowed, A.O. filed two § 538.225 affidavits of merit.

Assuming *arguendo* that the trial court misapplied the law in allowing the late filings, A.O. is not entitled to any relief. "It is well settled that this Court will not permit a party to: (1) take a position on a matter that is directly contrary to, or inconsistent with, one previously

20

assumed; or (2) complain on appeal about an alleged error in which he joined, acquiesced or invited by his conduct at trial." ***Potter v. Hy-Vee, Inc.***, 560 S.W.3d 598, 606 (Mo. App. 2018); *see also* ***Klineline v. Klineline***, 481 S.W.3d 551, 554 (Mo. App. 2015); ***Ard v. Shannon Cty. Comm'n***, 424 S.W.3d 468, 476 (Mo. App. 2014). This case would have been dismissed without prejudice, as Defendants requested, if A.O. had not filed her untimely affidavits of merit in response to the trial court's order. *See* ***Spears ex rel. Clendening***, 403 S.W.3d at 622 (the trial court correctly dismissed Mother's petition without prejudice after she failed to file an affidavit of merit, as required by § 538.225.1). Defendants' motion was denied only because A.O. did so. By filing those untimely affidavits of merit, she took a position inconsistent with the one now advanced on appeal, and she joined or acquiesced in any alleged error by the trial court. Accordingly, Point 5 is denied.

Because all of A.O.'s points lack merit, the Judgment of the trial court is affirmed.

JEFFREY W. BATES, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCUR

BECKY J. WEST, J. – CONCUR

21